**Affirm in part; Reverse and Remand in part; Opinion Filed January 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01718-CV

**WOODHAVEN PARTNERS, LTD., WH MANAGEMENT, INC., MARK JOHNS, PMR PARTNERS I, LTD., SUNETICS INTERNATIONAL, L.P. A/K/A SUNETICS INTERNATIONAL, INC., AND JCMJ VENTURES, L.L.C., Appellants**

**V.**

**SHAMOUN & NORMAN, L.L.P. F/K/A SHAMOUN, KLATSKY, NORMAN, Appellee**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-00907-C**

## OPINION

Before Justices FitzGerald, Lang, and Myers
Opinion by Justice Myers

This is an appeal from a summary judgment granted in favor of appellee, Shamoun &

Norman, L.L.P. f/k/a Shamoun, Klatsky, Norman, against appellants, Woodhaven Partners, Ltd.,

WH Management, Inc., Mark Johns, PMR Partners I, Ltd., Sunetics International, L.P. a/k/a

Sunetics International, Inc., and JCMJ Ventures, L.L.C. In six issues, appellants argue the trial

court erred by (1) striking a summary judgment affidavit filed by appellant Mark Johns; (2)

granting appellee's traditional motion for summary judgment; (3) granting appellee's no-

evidence summary judgment motion; (4) overruling appellants' objections to the summary

judgment affidavit filed by C. Gregory Shamoun; (5) finding Mark Johns jointly and severally

liable with Sunetics International, Inc.; and (6) finding that appellee did not prove it was entitled

to the damages and attorneys' fees awarded by the trial court. We affirm the trial court's judgment in part, and reverse and remand for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a lawsuit brought by appellee, a Dallas law firm, for non-payment of various attorneys' fees incurred during four legal matters. In April of 2007, appellee was hired to represent appellant Sunetics International, Inc. ("Sunetics, Inc.," unless otherwise indicated), in a complex patent infringement case against Lexington Lasercomb I.P.A.G. and Lexington International, L.L.C. (the "Sunetics litigation"). The agreement was signed by Mark Johns, Sunetics, Inc.'s president and secretary. Also in April of 2007, appellee was hired to represent appellant Woodhaven Partners, Ltd., in a real estate litigation and contract dispute against Marlin Land Development, L.L.C. (the "Marlin litigation"). The agreement was signed by Johns, the president of Woodhaven Partners. In August of 2007, appellants Woodhaven Partners, Ltd., WH Management, Inc., PMR Partners I, Ltd., and Johns hired appellee to represent them in litigation involving claims brought by Balch Springs Development II, L.P. (the "Balch Springs litigation"). The agreement was signed by Johns as the authorized agent for PMR Partners, Woodhaven, WH Management, and by Johns individually. The following April, appellee was hired by Johns to represent him in proceedings involving the conservatorship of Johns's child (the "Johns custody litigation").

On February 10, 2010, appellee brought suit against Woodhaven Partners, Ltd., Mark Johns, WH Management, Inc., PMR Partners I, Ltd., Sunetics International, L.P., Sunetics International, Inc., and JCMJ Ventures, L.L.C. (collectively, "appellants") asserting causes of action for sworn account, breach of contract, and, alternatively, promissory estoppel and

quantum meruit, and fraud and fraud in the inducement,[1] based on appellants' failure to pay incurred attorneys' fees pursuant to the retainer agreements. Appellants answered. Appellants Mark Johns, Woodhaven Partners, Ltd., and WH Management counterclaimed against appellee for breach of contract, negligence, negligent misrepresentation, fraud, violations of the Texas Deceptive Trade Practices Act (DTPA), and breach of fiduciary duty, alleging that appellee overcharged appellants for legal services:

> [Appellants] would show that [appellants] and [appellee] entered into an agreement whereby [appellee] agreed to provide legal services to [appellants] at a reasonable rate. Notwithstanding this agreement, [appellee] overcharged [appellants] for the legal services in issue, as the billings [appellants] received from [appellee] were not proper and were not accurate causing damages to [appellants] in excess of the minimum jurisdictional limits of this Court.

Appellants also alleged affirmative defenses of ratification, waiver, fraud, estoppel, laches, unclean hands, set-off, prior material breach, and the economic loss rule.

On October 4, 2010, appellee filed a traditional and no-evidence motion for partial summary judgment. The summary judgment motion was supported, in part, by an affidavit from C. Gregory Shamoun, appellee's president and managing partner. After various pleadings were supplemented and amended by the parties, appellants filed their response to the motion for summary judgment and objected to Shamoun's affidavit. Affidavits from Mark Johns and Janet Randle, one of the attorneys of record for appellants, were included with appellants' response to appellee's summary judgment motion.

After another round of amended and supplemented pleadings, appellee filed, on April 19, 2011, an amended traditional and no-evidence motion for partial summary judgment. On May 11, 2011, along with their response to the amended motion for partial summary judgment, appellants filed a "Supplement to All Existing Answers," which purported to be a verified denial

---

[1] The claims for fraud and fraudulent inducement were subsequently nonsuited.

of appellee's claim for suit on a sworn account. Appellee objected to and moved to strike Mark Johns's and Janet Randle's affidavits.

On June 2, 2011, the trial court granted, in part, appellee's amended motion for partial summary judgment. The trial court sustained appellee's objections to Johns's affidavit and overruled its objections to Janet Randle's affidavit. The court then concluded that, given deficiencies in appellee's pleadings and proof, granting summary judgment against all appellants would be reversible error. The trial court thus granted summary judgment as to all of appellee's claims against (1) Sunetics, Inc. for the Sunetics litigation, and all of its affirmative defenses and counterclaims; (2) Woodhaven Partners for the Marlin litigation, and all of its affirmative defenses and counterclaims; (3) Woodhaven Partners, WH Management, PMR Partners, and Johns for the Balch Springs litigation, and all of their affirmative defenses and counterclaims; and (4) Johns, individually, for the Johns custody litigation, and all of his affirmative defenses and counterclaims. The trial court did not grant summary judgment against Johns for the Sunetics litigation or against WH Management for the Marlin litigation. The trial court also declined to award attorneys' fees because it could not determine the appropriate amount of fees to award, given that appellee's "attorney's fees affidavit involves fees against certain Defendants against whom Judgment has not been achieved," and that there was no "adequate segregation of fees."

After supplementing its Fourth Amended Petition on June 30, 2011, appellee filed a second summary judgment motion. The motion sought attorneys' fees and to hold Johns jointly and severally liable with Sunetics, Inc. for the Sunetics litigation, and WH Management jointly and severally with Woodhaven for the Marlin litigation. It was supported by an affidavit filed by Shamoun, along with numerous attached documents. Appellee also provided a segregation of its attorneys' fees in the Marlin and Sunetics litigation, supported by a second Shamoun affidavit.

–4–

In their response, appellants objected to Shamoun's first affidavit and moved to strike certain exhibits that accompanied the affidavit.

In the final judgment signed on September 29, 2011, the trial court granted appellee's second motion for summary judgment in its entirety. The court struck one sentence of the Shamoun affidavit, but overruled all of appellants' other objections. The court's final judgment found, inter alia, (1) against Sunetics, Inc. and Mark Johns, jointly and severally, for $244,732.95 in actual damages based on the Sunetics litigation, and $53,207.17 in attorneys' fees; (2) against Woodhaven Partners and WH Management, jointly and severally, for $61,163.46 in actual damages attributable to the Marlin litigation, and $18,853.30 in attorneys' fees; (3) against Woodhaven Partners, WH Management, PMR Partners, and Mark Johns, jointly and severally, for $11,102.38 in actual damages based on the Balch Springs litigation, and $11,546.41 in attorneys' fees; and (4) against Mark Johns, individually, for $89,773.89 in actual damages attributable to the Johns custody litigation, and $23,456.65 in attorneys' fees. Appellants filed a motion for new trial that was overruled by operation of law, followed by the instant notice of appeal.

## DISCUSSION

### 1. Affidavit of Mark Johns

In their first issue, appellants argue that the trial court erred by striking the affidavit testimony of Mark Johns because the testimony "was admissible under governing case law and the applicable retainer agreements."

### *Background*

After appellee filed its traditional and no-evidence motion for summary judgment seeking summary judgment as to its causes of action and appellants' counterclaims, appellants' response included an affidavit from Mark Johns disputing the reasonableness and necessity of the

–5–

attorneys' fees that are the subject of this lawsuit. Appellee moved to strike paragraphs 4, 8, 12, and 16 of the Johns affidavit as it applied to the reasonableness and necessity of the attorneys' fees and services.

In each of the challenged paragraphs, Johns began by quoting the following language that is found in all of the relevant retainer agreements between appellants and appellee:

> For purposes of this Engagement Letter, the Engagement means rendering of reasonable and necessary legal services including, without limitation, conducting a preliminary investigation; drafting documents, correspondence and pleadings; motion practice; conducting and defending discovery; attending mediation and trial; and drafting settlement documents. *Reasonable and necessary legal services shall be those which* [the client] *and* [appellee] *decide are reasonable and necessary to perform the Engagement. . .* [EMPHASIS ADDED].

Johns stated that he did "not agree that the invoices sent in this case to me by [appellee] were all for reasonable and necessary legal services that were reasonable and necessary to perform the Engagement." He then noted that appellee "agreed that 'Reasonable and necessary legal services shall be those which Client and [appellee] decide are reasonable and necessary,'" and added that he did "not agree that the services provided by [appellee] were reasonable and necessary to perform the Engagement in this matter." He reviewed individual invoices for various legal services, after which he stated that the claims did "not reflect invoices for the legal services I believe were all reasonable and necessary," and that he did not believe all of the services for which he was billed by appellee "were reasonable and necessary services as reflected above."

Appellee's motion to strike argued that Johns is not an attorney and that his assertions regarding the reasonableness and necessity of attorneys' fees are not competent summary judgment evidence. The trial court sustained appellee's objections in its order partially granting summary judgment, finding:

> Plaintiff's Objections to the Johns Affidavit are SUSTAINED. Plaintiff is correct that Johns is not a competent or qualified witness to offer an expert opinion as to the reasonableness and necessity of attorney's fees. In that respect, Plaintiff's objection is SUSTAINED, and paragraphs 4, 8, 12, and 16 are struck as expert

–6–

opinion evidence if being offered by Defendants to prove Plaintiff's attorneys['] fees were not reasonable and necessary.

### *Standard of Review*

Inclusion or exclusion of summary judgment evidence is a matter committed to the trial court's discretion. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 528 (Tex. App.—Ft. Worth 2009, pet. denied). We review a trial court's ruling sustaining or overruling objections to summary judgment evidence for an abuse of discretion. *See All Am. Tel.,* 291 S.W.3d at 528; *Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 521 (Tex. App.—Dallas 2007, no pet.); *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id*.

### *Analysis*

Appellants argue that the Texas Supreme Court's decision in *Anglo-Dutch Petroleum Int'l v. Greenberg Peden, P.C.*, 352 S.W.3d 445 (Tex. 2011), combined with the above-noted terms of the retainer agreements between appellants and appellee, gave Mark Johns the right to testify as to *his* determination of the reasonableness and necessity of legal services. In particular, appellants cite this portion of the *Anglo-Dutch Petroleum* opinion:

> Only reasonable clarity is required, not perfection; not every dispute over the contract's meaning must be resolved against the lawyer. But the object is that the client be informed, and thus whether the lawyer has been reasonably clear must be determined from the client's perspective. Accordingly, we agree with the Restatement (Third) of the Law Governing Lawyers that "[a] tribunal should construe a contract between client and lawyer as a reasonable person in the circumstances of the client would have construed it."

*Id*. at 451 (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS, § 18(2)).

There are several problems with this argument. To begin with, the issue in *Anglo-Dutch Petroleum* was whether the fee agreement letter that the client accepted was with the law firm of Greenberg Peden, P.C., or with the individual attorney, when the letter was written on firm letterhead and signed on behalf of the firm. *Id*. at 446. The dispute, in other words, was whether the attorneys' fee agreement was ambiguous. *Id*. The concept of viewing the agreement from the client's perspective, as applied, concerned whether the facts and circumstances viewed from the client's perspective indicated he was contracting with the firm and not the individual lawyer. *Id*. at 449–453. In the present case, neither party below raised an issue of ambiguity that would require the fee agreements to be construed or interpreted by the court. Appellants are arguing, instead, that Johns's lay testimony is admissible in order to contest the reasonableness and necessity of the attorneys' fees in the underlying litigation. No reasonable interpretation of *Anglo-Dutch Petroleum* supports such an argument.

Texas law is clear that "[t]he issue of reasonableness and necessity of attorney's fees requires expert testimony." *Twin City Fire Ins. Co. v. Vega–Garcia*, 223 S.W.3d 762, 770–71 (Tex. App.—Dallas 2007, pet. denied); *see also Phillips v. Phillips,* 296 S.W.3d 656, 671 (Tex. App.—El Paso 2009, pet. denied); *Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App.—San Antonio 2002, pet. denied); *Woollett v. Matyastik*, 23 S.W.3d 48, 53 (Tex. App.—Austin 2000, pet. denied); *Ogu v. C.I.A. Services, Inc.*, No. 01–09–01025–CV, 2011 WL 947008, at *3 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.); *Horvath v. Hagey*, No. 03–09–00056–CV, 2011 WL 1744969, at *9 (Tex. App.—Austin, May 6, 2011, no pet.) (mem. op.). An attorney testifies as to reasonableness; the testifying attorney must be designated as an expert before he or she testifies. *See Lesikar v. Rappeport*, 33 S.W.3d 282, 308 (Tex. App.—Texarkana 2000, pet. denied); *see also Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 148 (Tex. App.—Houston [14th Dist.] 1986, no writ) ("An affidavit by an attorney representing a

party in a suit, concerning an award of attorney's fees, whether in support of or in contradiction of an amount claimed to be reasonable, is admissible in a summary judgment proceeding and is considered expert testimony."). As a result, lay witness testimony regarding the reasonableness and necessity of attorneys' fees is not competent, admissible summary judgment evidence. *See, e.g., Cantu*, 90 S.W.3d at 826 (non-attorney testified as to appellate attorneys' fees; such testimony did not constitute expert testimony and award of appellate attorneys' fees reversed on appeal); *Woollett*, 23 S.W.3d at 53 (a "layman's unsupported assertion regarding reasonableness and necessity for attorney's fees does not support the payment of attorney's fees from the estate"); *Ogu*, 2011 WL 947008, at *3 (because counter-defendants, neither of whom were attorneys, did not designate themselves or qualify as experts on issues concerning attorneys' fees, trial court properly restricted their testimony concerning reasonableness and necessity of attorneys' fees); *Horvath*, 2011 WL 1744969, at *9 (lay witness's testimony as to what she paid her attorney was insufficient to support attorneys' fee award); *In the Interest of L.L.*, No. 04–08–00911–CV, 2010 WL 2403579, at *8 (Tex. App.—San Antonio June 16, 2010, no pet.) (mem. op.) (party's testimony regarding her attorney's hourly rate and amount she had paid did not constitute expert testimony and trial court erred in awarding attorney's fees based on her testimony).

In his affidavit, Mark Johns purports to testify regarding the reasonableness and necessity of attorneys' fees and legal expenses in the underlying litigation. But Johns is not an attorney, and he does not qualify as an expert on issues concerning attorneys' fees. He offered conclusory assertions without the support or analysis that must be performed by any witness testifying as to the reasonableness and necessity of attorneys' fees. Accordingly, because the testimony and opinions proffered by Johns in paragraphs 4, 8, 12, and 16 of his affidavit are inadmissible and

not competent summary judgment evidence, the trial court did not abuse its discretion by sustaining appellee's objections to Johns's affidavit. We overrule appellants' first issue.

### 2. Appellee's Amended Traditional Motion for Partial Summary Judgment

In their second issue, appellants argue that the trial court erred by granting appellee's amended traditional motion for partial summary judgment because appellee did not prove it was entitled to summary judgment as a matter of law, "given the questions of fact raised in Mark Johns's affidavit and Janet Randle's affidavit as to [appellee's] breach of contract on multiple retainer agreements." Appellee responds that the traditional summary judgment should be affirmed as to its claims against appellants because it proved there was no genuine issue of material fact regarding its cause of action for suit on a sworn account—one of the grounds on which it moved for traditional summary judgment.

### *Standard of Review*

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We apply the well-established standards for reviewing summary judgments. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310–11 (Tex. 2009) (no-evidence summary judgment standard of review); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standard of review). A traditional motion for summary judgment must show there is no genuine issue as to a specified material fact and, therefore, the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). For a defendant to prevail on a traditional motion for summary judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or conclusively establish all elements of an affirmative defense. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied). If the movant meets its burden,

then and only then must the non-movant respond and present evidence raising a fact issue. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

When, as in this case, multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, we will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684 (Tex. App.—Dallas 2007, pet. denied). The appealing party must show that none of the proposed grounds is sufficient to support the judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.). If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *See, e.g.*, *Carter v. PeopleAnswers, Inc.*, 312 S.W.3d 308, 311 (Tex. App.—Dallas 2010, no pet.); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied).

### *Appellee's Sworn Account Claim*

In support of count one of its fourth amended petition that alleged suit on a sworn account against appellants, including Mark Johns, based on the unpaid legal fees and expenses, appellee filed a sworn account affidavit and verification from C. Gregory Shamoun, appellee's president and managing partner. Shamoun declared that, after "[a]ll just and lawful offsets, payments and credits" were applied, appellee was owed $244,732.95 on the account for the Sunetics litigation; $61,163.46 for the Marlin litigation; $11,102.38 for the Balch Springs litigation; and $89,773.89 for the Johns custody litigation. Shamoun further declared that he had personal knowledge of all the facts set forth in the petition and verification, that the facts contained "therein and herein" were true and correct, and that the claims asserted were for work

performed and were "just and true." Attached to the affidavit are copies of lengthy billing invoices from appellee that are itemized according to the date of each charge, the initials of the individual (identified as "Staff") who performed the service, a brief description of the work performed,[2] the hours billed, the billing rate, and the charges.

### *Appellants' Response*

Along with their response to appellee's amended motion for partial summary judgment, appellants filed "Defendants' Supplement to All Existing Answers," which denied that appellants are "indebted for the amount alleged in Plaintiff's Fourth Amended Petition pursuant to Rules 93(10) and 185 of the Texas Rules of Civil Procedure." Appellants quoted rules 93(10) and 185, after which they denied "the sworn account made the basis of Plaintiff's Fourth Amended Petition pursuant to Rules 93(10) and 185 of the Texas Rules of Civil Procedure." Appellants then quoted rules 93(10) and 185 a second time. Appellants also supplied a "verification" from Mark Johns which stated "that he has read the DEFENDANTS' SUPPLEMENT TO ALL EXISTING ANSWERS; and that the allegations contained in Paragraphs II and III are within his personal knowledge and true and correct."

### *Applicable Law*

Rule 185 of the Texas Rules of Civil Procedure sets out the criteria for a suit on an account and provides that an open account includes "any claim . . . for personal service rendered." *See* TEX. R. CIV. P. 185. The cause of action must be supported by the affidavit of the party, his agent or attorney "taken before some officer authorized to administer oaths, to the effect that such claim is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed." *Id.*; *Panditi v. Apostle*, 180

---

[2] As with the other revised billing invoices in this record, the descriptions in these line items are heavily redacted or "blacked out" save for a few words generally describing the activity being performed—with the specific nature of the work performed being redacted.

S.W.3d 924, 926 (Tex. App.—Dallas 2006, no pet.); *see also Brumley v. Image Cleaners & Laundry, Inc.*, No. 05–05–01478–CV, 2006 WL 1727753, at *2 (Tex. App.—Dallas June 26, 2006, no pet.) (mem. op.).

The rule "is a rule of procedure regarding the evidence necessary to establish a prima facie right of recovery." *Panditi*, 180 S.W.3d at 926. An open account "on which a systematic record has been kept and is supported by an affidavit" is prima facie evidence of a claim. *Id.* A plaintiff claiming a suit on a sworn account is not required to formally introduce the account as evidence of the debt. *Brown Found. Repair & Consulting, Inc. v. Friendly Chevrolet Co.*, 715 S.W.2d 115, 116 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). This evidentiary presumption can be destroyed, however, and the plaintiff forced to introduce proof of its claim, when a defendant files a sworn denial of the plaintiff's account supported by an affidavit denying the account as required by rule 93(10). *Powers v. Adams*, 2 S.W.3d 496, 498 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Roberts Express, Inc. v. Expert Transp., Inc.*, 842 S.W.2d 766, 770 (Tex. App.—Dallas 1992, no writ)); *see* TEX. R. CIV. P. 93(10). In the absence of a sworn denial meeting the requirements of the rule, the account is received as prima facie evidence against the party. *Vance v. Holloway*, 689 S.W.2d 403, 404 (Tex. 1985).

"An opponent that does not properly file a written denial under oath will not be permitted to dispute the receipt of the services or the correctness of the charges" *Andrews v. E. Tex. Med. Ctr.-Athens*, 885 S.W.2d 264, 267 (Tex. App.—Tyler 1994, no writ); *see also Huddleston v. Case Power & Equip. Co.*, 748 S.W.2d 102, 103–04 (Tex. App.—Dallas 1988, no writ); *Hinojosa Auto Body & Paint, Inc. v. Finishmaster, Inc.*, No. 03–08–00361–CV, 2008 WL 5210871, at *5 (Tex. App.—Austin, Dec. 12, 2008, no pet.) (mem. op.). Hence, he may not "dispute the receipt of the items or services, or the correctness of the stated charges." *See Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979).

A sworn general denial does not constitute a denial of the account and is insufficient to remove the evidentiary presumption created by a properly worded and verified suit on an account. *See Panditi*, 180 S.W.3d at 927; *Andrews*, 885 S.W.2d at 267; *Martinez v. Rio Grande Steel, Ltd.*, No. 13–06–00097–CV, 2008 WL 668232, at *3 (Tex. App.—Corpus Christi Mar. 13, 2008, no pet.) (mem. op.); *Chang Shun Chu v. Everbeauty, Inc.*, No. 05–10–01268–CV, 2011 WL 5926691, at *1 (Tex. App.—Dallas Nov. 22, 2011, no pet.) (mem. op.). The defendant's written denial must state more than a broad generalization that he "specifically denies" the sworn account allegations; instead, the verified affidavit must address the facts on which the defendant intends to rebut the plaintiff's affidavit. *Andrews*, 885 S.W.2d at 268; *Martinez*, 2008 WL 668232, at *3.

In *Andrews v. East Texas Medical Center*, which is cited by appellee, the defendant swore under oath that the sworn account "was not true in whole or in part." 885 S.W.2d at 265. The court of appeals found that this answer, "although verified, is no more than a verified general denial," and thus insufficient. *Id*. at 268. The court noted that "the purpose of a verified specific denial is to point out the manner in which the plaintiff's allegations within the petition are not true. Otherwise neither the court nor the opposing party is apprised of the fact issue that necessitates further litigation." *Id*. at 267. Because the defendant's answer "fail[ed] to address the facts on which he intend[ed] to rebut the plaintiff's affidavit," the court concluded it did not comply with rules 185 and 93(10), and, therefore, could not defeat summary judgment. *Id*. at 268.

### *Analysis*

Relying in part on *Andrews*, appellee argues that appellants' "Supplement to All Existing Answers," though verified, was nothing more than a "sworn general denial" and that appellants

failed to meet the requirements of the rules of civil procedure.[3]  Although they broadly challenge appellee's traditional summary judgment motion, appellants do not challenge all possible grounds on which summary judgment could have been granted.  In particular, appellants do not address appellee's sworn account claim—no argument, analysis, citation to legal authority, or reference to the lengthy summary judgment record.[4]  *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record); *Staton Holdings, Inc. v. Tatum L.L.C.*, 345 S.W.3d 729, 733 (Tex. App.—Dallas 2011, pet. denied); *Jarvis*, 298 S.W.3d at 313–14; *see also Haidar v. Nortex Found. Designs, Inc.*, 239 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *Scheler v. Smith*, No. 05–08–01439–CV, 2010 WL 2978333, at *2 (Tex. App.—Dallas July 30, 2010, no pet.) (mem. op.).  An appellant cannot negate all possible grounds upon which a summary judgment could have been granted merely by declaring that the appeal is intended to challenge all possible grounds.  *See Jarvis*, 298 S.W.3d at 313 n.8.  The appellant "must also provide appropriate arguments within that issue negating all possible grounds upon which summary judgment could have been granted."  *See id*.  Appellants have not done this.  Because they failed to challenge appellee's suit on a sworn account claim on appeal, we could affirm the trial court's traditional summary judgment in appellee's favor on that basis alone.  *See Staton*, 345 S.W.3d at 733; *Jarvis*, 298 S.W.3d at 314.

Nevertheless, we note that appellee's sworn account affidavit attached to its petition contains all of the necessary elements.  *See* TEX. R. CIV. P. 185.  The attached account invoices

---

[3] In its amended traditional and no-evidence motion for partial summary judgment, appellee argued that because appellants failed to file a sufficient verified denial in compliance with rules 185 and 93(10), and did not sufficiently deny the accounts on which the sworn account claim was filed, there was no genuine issue of material fact regarding the suit on a sworn account claim.  This motion was actually filed several weeks before appellants' "Supplement to All Existing Answers," but there is no question that the sufficiency of appellants' verified denial was before the trial court.  Appellants' counsel acknowledged during oral argument that appellee challenged the sufficiency of the verified denial in the trial court.

[4] The three-volume electronic clerk's record filed in this case includes over 3,000 pages.

include information reflecting the date of each charge, initials of the individual who performed the service, a brief description of the work performed, hours billed, the billing rate, and the specific charges. Thus, appellee's verified pleading was prima facie proof of appellants' debts. Appellants' broad, generalized denial, proffered as a "verified denial," did not constitute a proper denial of the sworn account. It was, at most, a verified general denial, which is insufficient to rebut the evidentiary effect of appellee's sworn account pleadings and put appellee to its proof.

Additionally, "even when a defendant verifies its sworn denial to a suit on a sworn account, a plaintiff may properly obtain summary judgment on its sworn account by filing 'legal and competent summary judgment evidence establishing the validity of its claim as a matter of law.'" *Andy's Sunmart # 352, Inc. v. Reliant Energy Retail Services, L.L.C.*, No. 01–08–00890–CV, 2009 WL 3673093, at *3 (Tex. App.—Houston [1st Dist.], Nov. 5, 2009, no pet.) (mem. op.) (quoting *PennWell Corp. v. Ken Assocs. Inc.*, 123 S.W.3d 756, 765 (Tex. App.—Houston [14th Dist.) 2003, pet denied)); *see also Prompt Prof'l Real Estate, Inc. v. RSC Equip. Rental, Inc.*, 05–08–00398–CV, 2009 WL 1211810, at *2 (Tex. App.—Dallas May 5, 2009, no pet.) (mem. op.) (citing *PennWell*, 123 S.W.3d at 765). Appellee did not move for summary judgment solely on the pleadings; it also moved for summary judgment on the grounds it had proven its entitlement to judgment as a matter of law based on the summary judgment evidence. As part of its amended partial summary judgment motion, appellee included an affidavit from Shamoun stating that the firm was hired to represent various appellants on several legal matters, "including a custody dispute, real estate and contract disputes, and a complex patent infringement case," and that Mark Johns was appellee's "primary contact and the corporate representative of each of the entity Defendants, with whom [appellee] dealt relative to the underlying litigation matters." Shamoun declared that, exclusive of interest, a total principal balance of $244,732.95 was due and payable for legal services furnished "to and for the Sunetics

Defendants"; $61,163.46 for legal services furnished "to and for the Marlin Defendants"; $11,102.38 for legal services furnished "to and for the Balch Springs Defendants"; and $89,773.89 for legal services furnished "to and for Johns." The affidavit further stated that appellee provided the "Sunetics Defendants," "Marlin Defendants, "Balch Springs Defendants" and Johns with "regular statements of account" that set forth the "time and expenses incurred in rendering legal services" and that, on several occasions, it made demand on appellants for payment on the outstanding balances due on these accounts, but appellants "failed and refused to pay." "All lawful offsets, payments and credits have been applied" to the accounts, and they remain unpaid. Appended to the affidavit were, according to the affidavit, "original or exact duplicates of the original" billing invoices.[5]

In their response, apart from proclaiming that their verified denial was sufficient to defeat appellee's sworn account claim, appellants cited no competent summary judgment evidence in response to appellee's summary judgment evidence in support of its sworn account claim. *See Bich Ngoc Nguyen v. AllState Ins. Co.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied) (nonmovant must refer specifically to evidence it claims raises a genuine issue of material fact). Even if we assume appellants' purported sworn denial of the accounts was sufficient to force appellee to put on proof of its claims, it did not raise an issue of fact. *See United Bus. Machs. v. Entm't Mktg., Inc.*, 792 S.W.2d 262, 264 (Tex. App.—Houston [1st Dist.] 1990, no writ) (buyer's sworn denial, while destroying evidentiary effect of account and forcing seller to put on proof, did not constitute any evidence in opposition to seller's subsequent summary judgment motion because pleadings are not summary judgment evidence). Therefore, appellants failed to raise an issue of fact to defeat summary judgment, and the trial court properly

---

[5] The invoices are redacted or "blacked out," as noted earlier, to omit information regarding the specific nature of the work that was performed.

granted summary judgment, on appellee's sworn account claim. We overrule appellants' second issue.

**3. Appellee's Amended No-Evidence Motion for Partial Summary Judgment**

In their third issue, appellants contend the trial court erred by granting appellee's no-evidence motion for summary judgment as to appellants' counterclaims for breach of contract, negligence, negligent misrepresentation, fraud, DTPA, and breach of fiduciary duty, "given the evidence presented by affidavit testimony of Mark Johns and Janet Randle."

*Standard of Review*

A no-evidence motion for summary judgment under rule 166a(i) must challenge specific elements of the opponent's claim or defense on which the opponent will have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The opponent must then present summary judgment evidence raising a genuine issue of material fact to support the challenged elements. *Id*. A genuine issue of material fact exists if the non-movant produces more than a scintilla of evidence supporting the existence of the challenged element. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

*Challenge to Damages Element for Each of the Counterclaims*

In its amended traditional and no-evidence motion for partial summary judgment, appellee argued, in part, that appellants' counterclaims failed as a matter of law because there was no evidence of recoverable damages for any of the counterclaims apart from attorneys' fees, which are not recoverable as damages in and of themselves. In particular, appellee cited excerpts from Mark Johns's deposition to argue that the only evidence of actual damages showed appellants' damages were based on attorneys' fees, court costs, time, and effort spent defending against appellee's claims:

–18–

Q. [APPELLEE'S TRIAL COUNSEL:] But the damages that you are—Sunetics is claiming that my firm caused, is the attorney's fees that you're having Sunetics is having to pay, correct?

A. [JOHNS:] Attorney's fees, time, and effort.

* * * *

Q. [APPELLEE'S TRIAL COUNSEL:] The damages you've incurred include attorney's fees and court costs; is that fair?

A. [JOHNS:] Yes, sir.

Q. They also include time spent; is that right?

A. Yes, sir.

In their response to the amended motion for partial summary judgment, appellants asserted:

> Defendants argue herein that the motions should be denied on the grounds that Plaintiff has not met its burden of establishing, as a matter of law, that they are entitled to prevail on summary judgment, as questions of material fact as to: (1) which parties were signatories to the contracts in question; and (2) which, if any, party breached the agreement first; and (3) the amount of monies, if any, owed.

They also argued:

> There are genuine issues of material fact as to whether the Plaintiff breached the agreement by failing to submit invoices to each Defendant timely, whether those invoices reflected the reasonable services decided on by both Defendant and Plaintiff as required by each agreement, whether the Defendants being sued on said agreement were in fact parties to the agreement, and whether the Plaintiff who signed the agreement is in fact the same plaintiff in this action, or has the same rights as the Plaintiff who signed the agreements in question.

Appellants, however, did not address appellee's contentions regarding damages or attempt to substantiate the "actual damages" elements of their counterclaims, and on appeal they fail to point to any damages they suffered as a result of appellee's conduct—apart from the incurring of attorneys' fees and legal expenses.

### *Attorneys' Fees Not Recoverable as Damages*

Texas law distinguishes between the recovery of attorneys' fees as actual damages and recovery of attorneys' fees incident to the recovery of other actual damages. *Worldwide Asset*

*Purchasing, L.L.C. v. Rent–a–Center East, Inc.*, 290 S.W.3d 554, 570 (Tex. App.—Dallas 2009, no pet.). A party may recover attorneys' fees only as provided by contract or statute. *Id.*; *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2003, no pet.). As a general rule, attorneys' fees are not recoverable as damages in and of themselves. *See, e.g., Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003); *Imagine Automotive Group, Inc. v. Boardwalk Motor Cars, L.L.C.*, 356 S.W.3d 716, 718 (Tex. App.—Dallas 2011, no pet.); *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 521 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Worldwide Asset Purchasing,* 290 S.W.3d at 570; *see also Quest Communications Int'l, Inc. v. AT & T Corp.*, 114 S.W.3d 15, 35–36 (Tex. App.—Austin 2003) (damages measured by plaintiff's attorneys' fees recoverable only under certain exceptions not implicated here), *rev'd in part on other grounds*, 167 S.W.3d 324 (Tex. 2005) (per curiam).

A party relying on assertions of non-recoverable damages alone, such as attorneys' fees and expenses sustained in defending a lawsuit and prosecuting a counterclaim, has presented a legal barrier to any recovery. *See Tana*, 104 S.W.3d at 82 (damages described in terms of "value of time spent" and "costs incurred" in defending lawsuit were non-recoverable, even if party seeking such damages could have proven all other elements of claim for tortious interference); *Eberts v. Businesspeople Personnel Servs., Inc.*, 620 S.W.2d 861, 863 (Tex. Civ. App.—Dallas 1981, no writ) ("[e]xpenses of litigation are not recoverable as damages unless expressly provided by statute or contract," and "[t]his rule applies to a litigant's loss of time"); *Phillips v. Latham*, 523 S.W.2d 19, 27 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) ("the only time lost from work by either of the plaintiffs . . . was time lost because of the pendency of the lawsuit, such as that required for depositions and attendance at the two trials in this case. This loss is an expense of litigation. We know of no authority supporting recovery of actual damages for such a

loss . . . ."); *see also Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App.—Houston [1st Dist.] 2007 (op. on reh'g), *rev'd on other grounds*, 266 S.W.3d 447 (Tex. 2008) (per curiam). This is true even if all other elements of the party's claim are proven. *See Tana*, 104 S.W.3d at 82; *Consumer Portfolio Servs, Inc. v. Obregon*, No. 13–09–00548–CV, 2010 WL 4361765, at *9 (Tex. App.—Corpus Christi Nov. 4, 2010, no pet.) (mem. op.).

### *Breach of Contract*

To recover on any of their counterclaims—breach of contract, negligence, negligent misrepresentation, fraud, DTPA, and breach of fiduciary duty—appellants had to establish damages, among other elements. Beginning with breach of contract, the elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Haden*, 332 S.W.3d at 521–22 (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)); *see also Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). A party may recover attorneys' fees in a breach of contract claim without an agreement providing for them if the party claiming the fees (1) prevails on its breach of contract claim and (2) recovers damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002; *Haden*, 332 S.W.3d at 522.

### *Negligence and Negligent Misrepresentation*

A negligence claim against an attorney requires proof that (1) the attorney owed the plaintiff a duty; (2) the attorney's negligent act or omission breached that duty; (2) the breach proximately caused the plaintiff's injury, and (4) the plaintiff suffered damages. *See Akin, Gump, Strauss, Hauer & Feld. L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). The elements of negligent misrepresentation are: (1) a defendant provided information in the course of his business, or in a transaction in which he had a pecuniary interest;

(2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered damages proximately caused by the reliance. *Larsen v. Carlene Langford & Assocs.*, 41 S.W.3d 245, 249–50 (Tex. App.—Waco 2001, pet. denied); *see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

### Fraud, DTPA, and Breach of Fiduciary Duty

To establish a claim for fraud, the proof must establish a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990). Attorneys' fees are not recoverable as actual damages in fraud cases. *Haden*, 332 S.W.3d at 519.

To establish a claim for violations of the DTPA, a plaintiff must show he sustained damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a) (requiring that defendant's act constitute a producing cause of economic or mental anguish damages); *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998) (stating elements of claim for unconscionable conduct recovery under DTPA, including damages pursuant to section 17.50(a)); *see also Haden*, 332 S.W.3d at 519. "In a DTPA claim, '[w]ithout an actual-damages recovery, a party is not entitled to an attorney's fee recovery.'" *Haden*, 332 S.W.3d at 519 (quoting *Gulf States Util. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002)).

To recover for breach of a fiduciary duty, the evidence must show the existence of a fiduciary duty, breach of the duty, causation, and damages. *Id.* (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). Clients who sue their attorney for breach of fiduciary duty "need not prove actual

–22–

damages in order to obtain forfeiture of an attorney's fees for the attorney's breach of fiduciary duty to the client." *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999); *see also Haden*, 332 S.W.3d at 520. This exception arises when the complaining party seeks forfeiture of fees paid to counsel who breaches a fiduciary duty. *Haden*, 222 S.W.3d at 596 n.13. In that instance, the complaining party need not produce evidence of actual damages. *See id.* But appellants did not assert this type of damages in their pleadings or in their response to the amended motion for partial summary judgment. *See Burrow*, 997 S.W.2d at 240; *Bailey v. Gallagher*, 348 S.W.3d 322, 325 n.2 (Tex. App.—Dallas 2011, pet. denied); *Si Kyu Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 635 n.1 (Tex. App.—El Paso 2009, pet. denied); *Longaker v. Evans*, 32 S.W.3d 725, 733 n.2 (Tex. App.—San Antonio 2000, pet. withdrawn). Consequently, the exception does not apply in this case.

### *Analysis*

Appellee contends that the record in this case does not contain any competent summary judgment evidence that appellants incurred or would incur recoverable damages for any of their counterclaims. In their brief, appellants argue that the Mark Johns and Janet Randle affidavits—cited in their third issue—raise an issue of fact as to whether appellee breached the retainer agreements, and/or its duty to keep appellants informed, thereby precluding, at a minimum, summary judgment on appellants' breach of contract counterclaim. But appellants do not support their assertion with *any* substantive argument, analysis, citation to legal authority, or reference to the summary judgment record. *See* TEX. R. APP. P. 38.1(i); *In re Estate of Miller*, 243 S.W.3d 831, 840 (Tex. App.—Dallas 2008, no pet.) (issue waived because appellant did not analyze legal authority and made "no suggested application of it to the facts"); *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.) ("failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record

citations, waives any error on appeal"); *see also Haidar*, 239 S.W.3d at 927; *Scheler*, 2010 WL 2978333, at *2. Issues raised on appeal, but not briefed, are waived. *See, e.g.*, *Haidar*, 239 S.W.3d at 927.

Furthermore, assuming appellants' argument was not waived, the summary judgment evidence in this case shows that the only damages stated by appellants consist of legal fees and expenses they incurred in defending against *this* lawsuit brought by appellee and in prosecuting *their* counterclaims. Well-settled law recognizes that attorneys' fees and expenses are not recoverable as damages in and of themselves. *See, e.g., Tana*, 104 S.W.3d at 82; *Haden*, 332 S.W.3d at 521. Additionally, appellants did not seek the forfeiture of paid attorneys' fees as damages or establish any other type of compensable damages for their breach of fiduciary duty counterclaim. *See Burrow*, 997 S.W.2d at 240. For these reasons, we conclude the trial court properly granted no-evidence summary judgment in appellee's favor based on the absence of a genuine issue of material fact regarding the damages element of appellants' counterclaims. *See W. Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (we will affirm summary judgment if any of the grounds alleged in the summary judgment motion are meritorious). We overrule appellants' third issue.[6]

### 4. Affidavit of C. Gregory Shamoun

In their fourth issue, appellants argue that the trial court erred by overruling appellants' objection to the affidavit of C. Gregory Shamoun and accompanying exhibits, and subsequently allowing into evidence "hearsay and inadmissible redacted entries of attorney billings from which no evidence of work was able to be determined for purposes of reasonableness of services to support [appellee's] traditional summary judgment." Appellants specifically challenge the

---

[6] The trial court also granted summary judgment for appellee on appellants' affirmative defenses of ratification, waiver, fraud, estoppel, laches, unclean hands, set off, prior material breach, and the economic loss rule. Appellants do not raise any of these issues on appeal. Accordingly, we do not address them. *See* TEX. R. APP. P. 38.1(i).

–24–

following documents attached to Shamoun's affidavit: (1) redacted invoices for legal services and (2) information obtained over the internet from the Texas Secretary of State and Nevada Secretary of State websites.

### *Background*

The trial court initially granted appellee's amended motion for partial summary judgment on all of appellee's causes of action, and ruled against appellants on their affirmative defenses and counterclaims. The trial court, however, did not grant summary judgment in its entirety against all appellants, nor did it award attorneys' fees. Appellee then filed a second motion for partial summary judgment arguing that Johns should be held individually liable under Texas law for the unpaid legal services and costs associated with the Sunetics litigation, and that WH Management should be jointly and severally liable as a general partner of Woodhaven, against whom summary judgment had already been granted, for the unpaid legal services and costs associated with the Marlin litigation. The second summary judgment motion also segregated appellee's section 38.001 attorneys' fees for the current lawsuit.

Appellee's second partial summary judgment motion included two additional affidavits from Shamoun—attached to the motion as exhibits "A" and "4." Only one of these affidavits, exhibit A, is challenged on appeal.[7] In the exhibit A affidavit, after stating he had "personal knowledge of all facts set forth herein," Shamoun attested that he was the firm's president and managing partner and had care, custody, and control of the documents attached to the affidavit, which he alleged were "the original or exact duplicates of the original."[8] Those documents

---

[7] When they objected to Shamoun's affidavit in the trial court, appellants did not specify whether they were objecting to the exhibit A affidavit, the exhibit 4 affidavit, or both. On appeal, however, appellants limit the discussion in their brief to the exhibit A affidavit and accompanying documents. They do not challenge the other Shamoun affidavit, exhibit 4, which is discussed in part six of this opinion. Consequently, to the extent appellants are contending they objected in the trial court to the exhibit 4 affidavit, and that the trial court erred by overruling those objections, that issue has been waived for inadequate briefing. *See* TEX. R. APP. P. 38.1(i).

[8] Paragraph 2 of the affidavit reads as follows:

–25–

included lengthy attorneys' fee invoices and billing statements for the Sunetics and Marlin litigation, attached to the affidavit as exhibits A-2, A-3, A-5, and A-6. Exhibit A-2 contained two revised invoices totaling $244,732.95 in unpaid bills for legal services provided to Sunetics, Inc.—charges that Shamoun stated were attributable to the Sunetics litigation. Exhibit A-5 contained a revised invoice for $61,163.46 in unpaid charges for legal services provided to Woodhaven Partners and WH Management—charges that Shamoun attested were attributable to the Marlin litigation. Each invoice was itemized according to the date of the charge, a brief description of the charge, the billable hours, the billing rate, and the specific charge. As with the invoices that accompanied appellee's verified petition, the descriptions in these documents of the work performed were redacted or "blacked out" save for a few words describing the activity being performed, e.g. "draft and revise," "review," "teleconference," "research," "copying," "filing," etc., with the specific nature of the work performed being redacted. Exhibits A-3 and A-6 contained, among other documents, unrevised invoices for the Sunetics and Marlin litigation; the descriptions in these documents of the work performed were entirely redacted.

Also attached to Shamoun's exhibit A affidavit, as exhibits A-10, A-11, and A-12, were documents obtained over the internet from the websites for the Texas Secretary of State and the Nevada Secretary of State. These documents were offered in support of appellee's argument that Johns should be held individually liable under section 171.255 of the Texas Tax Code, which imposes a corporation's liability on the corporation's directors and officers during a period of forfeiture of corporate privileges and for failing to file franchise reports. *See* TEX. TAX CODE

I have been and am the president of the managing partner of Shamoun & Norman, LLP f/k/a Shamoun Klatsky Norman ("S&N"), Plaintiff in the above-styled suit. I have care, custody, and control of records concerning the accounts of each of the various Defendants in the above-styled and numbered cause. Attached hereto are 221 pages of records from S&N. These said 221 pages of records are kept by S&N in the regular course of business, and it was the regular course of business of S&N for an employee or representative of S&N, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

ANN. § 171.255. Appellee argued that, based on this statute, Johns should be held individually liable for the unpaid legal fees and costs associated with the Sunetics litigation. The last two paragraphs of the affidavit, which discuss the Secretary of State documents, assert that appellee used public information obtained only and directly from the Texas Secretary of State and Nevada Secretary of State websites and online record repositories, and that this information was retrieved by "competent computer operators who followed careful procedures by printing" the images of the websites directly to a printer.

### *Appellants' Objections*

In their "Objection to Affidavit of C. Gregory Shamoun and Accompanying Exhibits," part of appellants' response to appellee's second motion for partial summary judgment, they brought the following objections:

> Defendants object to the Affidavit of C. Gregory Shamoun because Mr. Shamoun does not establish a foundation for testifying as to the work performed. He merely states that he is the managing partner of the firm in question but has no testimony regarding his work with the client during the period in question. In addition, Plaintiff objects to the legal conclusions regarding "jointly and severally" as there is no such language in the contract, and Mr. Shamoun is testifying as to legal conclusions that are contradicted by the express language of the contract. As such, his affidavit lacks the proper foundation to testify as to the reasonableness and necessity of the work provided, and as to any intent on the part of any defendant to be jointly and severally liable for any work. The contracts at issue speak for themselves, and Plaintiff objects to the "parole" evidence Mr. Shamoun attempts to proffer in his affidavit.

Appellants also objected to exhibits A-2, A-3, A-5, and A-6 and moved to strike them because they were "redacted," thus making the exhibits "void of any content and insufficient to establish the reasonableness of any work or time worked."

On appeal, appellants contend Shamoun's affidavit "did not lay a proper foundation for Mr. Shamoun to authenticate the exhibits that were attached." They argue Shamoun was "an interested witness" and that his testimony "was of such a nature that it could not be readily contradicted if untrue, given the redacted state of the billing." Appellants further argue

Shamoun's affidavit was "self-serving" because "[h]is testimony is based upon redacted billing entries. . . that were impossible for the Court to read much less evaluate." Appellants also take issue with Shamoun's assertion that the billing records attached to the affidavit are "the original or exact duplicates of the original." Appellants claim the documents "do not reflect the legal services, as they are completely redacted."[9]

When appellants objected to Shamoun's affidavit in the trial court, they did not argue he was an interested witness. An objection asserting that an affiant is an interested witness is an objection to a defect in the form of an affidavit, and must be preserved in the trial court. *See Strother v. City of Rockwall*, 358 S.W.3d 462, 468–69 (Tex. App.—Dallas 2012, no pet.); *Four D Constr., Inc. v. Util. & Envtl. Servs., Inc.*, No. 05–12–00068–CV, 2013 WL 2563785, at *2 (Tex. App.—Dallas June 7, 2013, no pet.) (mem. op.); *see also Ahumada v. Dow Chem. Co.*, 992 S.W.2d 555, 562 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). A party must object in writing and obtain an express or implied ruling from the trial court to preserve a complaint about the form of summary judgment evidence. *Grand Prairie I.S.D. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990); *Strother*, 358 S.W.3d at 468–69. Because appellants did not do this, their argument was not preserved for appellate review. *See, e.g., Strother*, 358 S.W.3d at 468–69; *Four D Constr.,* 2013 WL 2563785, at *2.

As for appellants' other arguments, they objected to Shamoun's affidavit, both in the trial court and on appeal, on the grounds it did not establish a foundation for testifying as to the work performed by appellee. An objection that an affidavit failed to establish the basis for an affiant's

---

[9] The trial court sustained one of appellants' trial objections, striking "sentence 3 of paragraph 3 as to the 'jointly and severally' language therein." The sentence read as follows: "S&N rendered legal services to the Sunetics Defendants jointly and severally pursuant to S&N's agreement with the Sunetics Defendants and in full performance of such agreement." The ruling is not challenged on appeal.

Additionally, we note that appellants' "Objection to Affidavit of C. Gregory Shamoun and Accompanying Exhibits" also objected to exhibits A-10, A-11, and A-12, the Secretary of State documents. Because of our conclusion in part five of this opinion reversing and remanding the portion of the trial court's judgment holding Mark Johns jointly and severally liable for the $244,732.95 in underlying attorneys' fees and expenses attributable to the Sunetics litigation, the only issue raised on appeal for which the Secretary of State documents have any relevance, we will not address appellants' objections to those exhibits. *See* Tex. R. App. P. 47.1 (opinion must address issues "necessary to final disposition of the appeal").

–28–

personal knowledge of the facts asserted in the affidavit goes to the substance, not the form, of the affidavit, and need not have been raised in the trial court.  *See Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 375 (Tex. App.—Dallas 2011, no pet.); *City of Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.*, 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994), *aff'd*, 904 S.W.2d 656 (Tex. 1995).

In the exhibit A affidavit, Shamoun stated that he had personal knowledge of all facts set forth in the affidavit, and that he had care, custody, and control of the records attached to the affidavit.  He did not detail his work for the clients during the periods in question.  But he stated that he was appellee's managing partner, that appellee was hired by Sunetics, Inc. and Johns to represent them during the Sunetics litigation, and by Woodhaven Partners and WH Management to represent them during the Marlin litigation, that the legal services were provided pursuant to the specific fee agreements, and that appellee provided the legal services reflected in the attached invoices.  The revised invoices, furthermore, although heavily redacted, contained line-by-line itemizations of the various charges together with brief descriptions of each charge.  Contrary to the suggestion in appellants' brief that these invoices were "completely redacted," significant information was provided regarding the activities conducted by appellee during the underlying litigation.  We conclude that the affidavit demonstrated a sufficient basis for Shamoun's personal knowledge regarding the facts alleged.  *See Hydroscience Technologies, Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 791–92 (Tex. App.—Dallas 2013, pet. denied) (for summary judgment affidavit to have probative value, affiant must swear facts in the affidavit reflect his personal knowledge; references to true and correct copies of documents in support of an affidavit can establish personal knowledge); *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts).

Hence, the trial court did not abuse its discretion by overruling appellants' objections. We overrule appellants' fourth issue.

### 5. Mark Johns's Joint and Several Liability

In their fifth issue, appellants contend the trial court erred by finding Mark Johns jointly liable with Sunetics, Inc. for the Sunetics litigation attorneys' fees and expenses because the evidence was insufficient to establish Sunetics, Inc.'s violation of any law.

At issue is the part of the trial court's final judgment finding Johns, as an individual, jointly and severally liable with Sunetics, Inc. for the $244,732.95 in actual damages attributable to the Sunetics litigation, together with reasonable and necessary attorneys' fees and costs and pre and post-judgment interest. In its second motion for partial summary judgment, appellee argued that Johns, as the president and secretary of Sunetics, was jointly and severally liable for its debts because of Sunetics, Inc.'s forfeiture of corporate privileges (i.e., "Johns is jointly and severally liable for the debts of Sunetics, Inc. as a result of Sunetics, Inc.'s forfeiture of corporate privileges under Texas Tax Code § 171.255.").

Section 171.255 provides:

(a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

(b) The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership.

(c) A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred: (1) over the director's objection; or (2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

–30–

(d) If a corporation's charter or certificate of authority and its corporate privileges are forfeited and revived under this chapter, the liability under this section of a director or officer of the corporation is not affected by the revival of the charter or certificate and the corporate privileges.

TEX. TAX CODE ANN. § 171.255; *Trammell v. Galaxy Ranch School, L.P*., 246 S.W.3d 815, 821–22 (Tex. App.—Dallas 2008, no pet.).

The problem with appellee's reliance on this statute is that, as appellee acknowledged in its second motion for partial summary judgment, Sunetics, Inc. filed its articles of incorporation in Nevada on March 3, 2005. As part of its summary judgment motion, appellee cited various provisions of the Nevada Revised Statutes to argue that Nevada law, like Texas, requires corporations to file annual forms that include the names and addresses of officers and directors. *See* NEV. REV. STAT. § 78.150. This "annual list" must be filed "on or before the last day of the month in which the anniversary date of incorporation occurs each year." *Id*. § 78.150(2). Failure to file the annual forms results in revocation of the corporate charter and a forfeiture of its right to transact business. *See id*. § 78.175(2). Moreover a document from the Nevada Secretary of State that is part of appellee's summary judgment proof—a "Certificate of Existence With Status of Revocation" for Sunetics, Inc.—shows that Sunetics failed to timely file its annual list or pay the required fee, and that it was in "revocation" under Nevada law as of April 1, 2010, for failing to file the annual list of officers and directors and designated agent for the period March 2009 to March 2010, as required by the Nevada Revised Statutes. *See id.* §§ 78.150, 78.175.

In *Tri-State Building Specialties, Inc. v. NCI Building Systems*, L.P., 184 S.W.3d 242 (Tex. App.—Houston [1st Dist.] 2005, no pet.), the court concluded that section 171.255 of the Texas Tax Code did not apply to a corporation whose privileges were suspended in another state for nonpayment of taxes in that jurisdiction. *Id*. at 251–52. The court noted that "[i]t is well-settled that section 171.255 must be strictly construed to protect those individuals against whom

–31–

liability is sought because it is penal in nature and cannot be extended beyond the clear meaning

of its language." *Id*. at 251. The court then stated:

> Chapter 171 of the Tax Code, of which section 171.255 is part, governs franchise taxation *in Texas*. Franchise taxes governed by that chapter are taxes on the privilege of transacting business *within Texas*. As Texas courts have recognized, section 171.255 is a revenue measure, the purpose of which is to enforce collection of Texas franchise taxes.

> Although not expressly stated in Chapter 171, it is logical that subsection 171.255(a) applies only to corporations that have failed to file a report or to pay a tax or penalty as required by Texas law. That is, it follows that subsection 171. 255(a) applies when a corporation has its corporate privileges forfeited in Texas, not in California. Here, NCI has not shown that subsection 171.255(a) applies to Tri–State, a California corporation, whose corporate rights and privileges were suspended by California authorities for noncompliance with California tax laws. In addition, NCI has not offered any evidence showing that Tri–State's corporate privileges have been forfeited by Texas authorities for non-compliance with Texas tax law. Thus, we conclude that NCI did not meet its burden to show that Hollister and Bush are personally liable pursuant to Texas Tax Code subsection 171.255(a) for NCI's claims against Tri–State.

*Id*. (internal citations omitted); *see also In re Dodgin*, No. 05–21729–RLJ–13, 2006 WL

3069714, at *4 (Bankr. N.D. Tex. Oct. 26, 2006) (New Mexico law determined liability of

officers and directors, not section 171.255, where the charter of a New Mexico corporation was

revoked by the State of New Mexico for failing to pay franchise taxes).

In a more recent case, *Widner Product Finishing Co. v. Southwood Door Co*., No. 03–

10–00188–CV, 2012 WL 677495, at *4 (Tex. App.—Austin 2012, pet. filed) (mem. op.), the

plaintiff argued that a director and officer of a Mississippi corporation that should have

registered to do business in Texas was personally liable for the corporation's debts. The court

concluded that section 171.255 of the Tax Code imposes personal liability on directors and

officers only when there is an actual forfeiture of corporate privileges under the Texas Tax Code.

*Id*. Since the Mississippi corporation in *Widner* never had any corporate privileges in Texas,

there was nothing to forfeit and personal liability could not be imposed under section 171.255:

> Southwood simply never had corporate privileges in Texas, so we cannot treat it as though it had (and forfeited) corporate privileges. Southwood may have forfeited corporate privileges in its home state of Mississippi, but section 171.255 applies only when a corporation has forfeited its privileges in Texas. *Id.* Because Southwood never had corporate privileges in Texas, Texas Tax Code section 171.255 cannot apply to the case at bar.

*Id.*

In the present case, appellee did not contend Nevada law held Johns personally liable. As in their brief on appeal, their summary judgment argument in the trial court regarding Johns's joint and several liability was premised on section 171.255. But appellee has not shown that section 171.255 applies to Sunetics, Inc., a Nevada corporation that was in "revocation" for noncompliance with Nevada laws according to the Nevada Secretary of State's "Certificate of Existence With Status of Revocation." In addition, there is no summary judgment evidence of which we are aware showing that Sunetics, Inc.'s corporate privileges were forfeited by Texas authorities for non-compliance with Texas law. Based on the record before us, we conclude appellee did not meet its burden of showing that Mark Johns is personally liable pursuant to section 171.255. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (stating that appellate courts can affirm summary judgment based only on a ground expressly stated in the motion for summary judgment granted by the trial court); *Shih v. Tamisiea*, 306 S.W.3d 939, 946 (Tex. App.—Dallas 2010, no pet.) (noting that court could not consider appellees' argument "because it was not raised below and an appellate court can affirm a summary judgment only on the grounds expressly set out in the motion."). Accordingly, we sustain appellants' fifth issue, in part. We reverse the portion of the trial court's judgment holding Mark Johns jointly and severally liable for the $244,732.95 in legal fees and expenses attributable to the Sunetics litigation, and remand for further proceedings.

### 6. Appellee's Damages and Attorneys' Fees

In their sixth issue, appellants contend the trial court erred by granting appellee's traditional summary judgment motion because appellee did not prove it was entitled to summary judgment regarding the amount of damages and attorneys' fees awarded by the court, "given the redacted state of its attorney fee billings and the evidence of unreasonable legal services presented by the Affidavits of Mark Johns and Janet Randle."

### Appellee's Damages

The damages sought by appellee in its fourth amended petition were liquidated damages. A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual, as opposed to the conclusory, allegations in plaintiff's petition and the instrument in writing. *See, e.g., Novosad v. Cunningham*, 38 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist] 2001, no pet.) (suit to recover amount due for professional services was a liquidated claim proven by written invoices attached to original petition); *Mantis v. Resz*, 5 S.W.3d 388, 392 (Tex. App.—Fort Worth 1999, pet. denied), *overruled on other grounds*, *Sheldon v. Emergency Med. Consultants*, 43 S.W.3d 701 (Tex. App.—Fort Worth 2001, no pet.) (in a suit on a sworn account, the petition with an attached sworn account and verified affidavit of the account was a liquidated claim proved by written instruments); *Harris, N.A. v. Obregon*, No. 05–10–01349–CV, 2013 WL 3524153, at *4–5 (Tex. App.—Dallas July 11, 2013, no pet.) (mem. op.) (damages for suit on a sworn account claim were liquidated because pleading provided requisite factual allegations to prove plaintiff's claim). The liquidated damages claimed by appellee were established as a matter of law. *See* Tex. R. Civ. P. 93(10), 185. Consequently, appellants' argument that appellee did not prove it was entitled to summary judgment regarding the amount of actual damages awarded by the trial court is unpersuasive.

### Section 38.001 Attorneys' Fees

As for attorneys' fees, the general rule is that litigants in Texas are responsible for their own attorneys' fees and expenses in litigation. *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012). Under Texas law, a court may award attorneys' fees only when authorized by statute or by the parties' contract. *MBM Fin. Corp. v. Woodlands Operating Co*., 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is entitled to seek an award of attorneys' fees is a question of law that we review de novo. *Holland v. Wal–Mart Stores, Inc*., 1 S.W.3d 91, 94 (Tex. 1999).

In its amended motion for partial summary judgment, and its second motion for partial summary judgment filed after the trial court declined to grant summary judgment as to certain claims and parties, appellee argued it was entitled to attorneys' fees pursuant to section 38.001(7), (8) of the Texas Civil Practice and Remedies Code. Section 38.001 provides, in part, that a party may recover attorneys' fees from an individual or a corporation, in addition to the amount of a valid claim and costs, if the claim is for a suit on a sworn account or for an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(7), (8). To recover attorneys' fees under section 38.001, the plaintiff must (1) prevail on a cause of action for which attorneys' fees are recoverable and (2) recover damages. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Texas law does not require detailed billing records or other documentary evidence as a prerequisite to awarding attorneys' fees. *See, e.g., Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517–18 (Tex. 1999) (per curiam); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892–93 (Tex. App.—Austin 2010, pet. denied); *In re A.B.P*., 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.); *Jarvis*, 298 S.W.3d at 319. "It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award." *Metroplex Mailing*

*Servs., L.L.C. and Jesse R. Marion v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (citing *In re A.B.P.*, 291 S.W.3d at 99).

### *Shamoun's Attorneys' Fees Affidavit*

As we previously noted, appellee's second partial summary judgment motion was supplemented by two Shamoun affidavits. One, attached to the motion as exhibit A, discussed, among other matters, the liability of Johns, individually, for the legal services, expenses and costs associated with the Sunetics litigation, and the liability of WH Management for legal services, expenses and costs associated with the Marlin litigation. The other affidavit, exhibit 4, which, as we have already noted, is not challenged on appeal, segregated the section 38.001 attorneys' fees claimed by appellee in the instant case. Paragraph six of this affidavit asserts:

> I have worked on litigation matters in the past that have involved the same or similar issues as those that exist in the case at bar. I have reviewed and am familiar with all of the pleadings in this case. I have reviewed and am familiar with all of the discovery conducted and produced in this case. I have personal knowledge of the activities conducted in this case since its inception. I have also reviewed the applicable billing statements accrued by Plaintiff throughout this suit.

Shamoun segregated appellee's attorneys' fees for the Sunetics, Balch Springs, Marlin, and Johns custody litigation as follows: $53,207.17 was attributed to Sunetics, Inc. and Mark Johns for the Sunetics litigation; $11,546.41 to Woodhaven Partners, Ltd., WH Management, Inc., PMR Partners, and Mark Johns for the Balch Springs litigation; $18,853.30 to Woodhaven Partners, Ltd. and WH Management, Inc. for the Marlin litigation, and $23,456.65 to Mark Johns for the custody litigation. Shamoun concluded with a case-by-case summary of what he believed were reasonable and necessary attorneys' fees recoverable in this suit. He alleged that appellee would incur an additional $20,000 in reasonable and necessary attorneys' fees in the event of an appeal to the court of appeals, $10,000 for an unsuccessful petition for review to the Texas Supreme Court, and $15,000 for full briefing and argument to the Texas Supreme Court.

Shamoun asserted that all of these fees were reasonable and necessary and that his opinion on the reasonableness and necessity of the fees was based on the *Arthur Andersen* factors, which he lists in the affidavit. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (providing a non-exclusive list of factors for the factfinder to consider when determining the reasonableness of a fee).

### *No Controverting Summary Judgment Evidence*

Appellants failed to controvert this testimony or provide any controverting summary judgment evidence regarding the attorneys' fees requested by appellee. The reasonableness and necessity of attorneys' fees, as we discussed earlier, requires expert testimony. *See, e.g.*, *Twin City Fire Ins.*, 223 S.W.3d at 770–71. Yet Mark Johns, who is not an attorney, could not testify regarding the reasonableness and necessity of attorneys' fees, and appellants withdrew their designations of their two expert witnesses "as to testimony regarding the attorneys' fees in this case."[10] Because appellants failed to raise an issue of fact regarding appellee's section 38.001 attorneys' fees, the trial court did not err by awarding the attorneys' fees sought by appellee.

But all fee claimants must segregate attorneys' fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). We have already determined that we must reverse and remand the portion of the trial court's judgment holding Johns jointly and severally liable with Sunetics, Inc for the $244,732.95 in actual damages attributable to the Sunetics litigation. The trial court, moreover, held Mark Johns jointly and severally liable with Sunetics, Inc. for the $53,207.17 in attorneys'

---

[10] Appellants originally designated their lead attorney, Evan Lane (Van) Shaw, to testify regarding issues of attorneys' fees in this case. Appellants subsequently designated their other attorney, Janet Randle, to also testify regarding attorneys' fees. On March 5, 2011, in a supplemental response to appellee's requests for disclosure, appellants answered "[n]one at this time" regarding their testifying experts. In a subsequent March 29 "De-designation of Expert Witnesses," appellants stated that they "hereby de-designate Van Shaw and Janet Randle as expert witnesses in this case." Appellants then proffered the affidavit of Janet Randle and attached materials as testimony in support of their response to appellee's amended motion for partial summary judgment (filed May 11, 2011). At the same time, they filed a "First Supplement to Defendants' De-designation of Expert Witnesses" that sought to amend their prior de-designation of expert witnesses as follows: "Defendants hereby de-designate Van Shaw and Janet Randle as expert witnesses in this case only as to testimony regarding the attorneys' fees in this case." Appellee moved to strike appellants' supplement along with its objections to Janet Randle's affidavit. In its order granting partial summary judgment, the trial court overruled appellee's objections to the Randle affidavit and denied the motion to strike.

fees and costs, and appellee's summary judgment proof does not segregate those fees as to the two defendants. We thus sustain appellants' sixth issue as to the $53,207.17 in section 38.001 attorneys' fees and costs attributable to the Sunetics litigation and remand that issue to the trial court for further proceedings. In all other respects, appellants' sixth issue is overruled.

## CONCLUSION

We affirm the trial court's judgment in part, and reverse and remand it in part. We reverse the portion of the trial court's judgment holding Mark Johns jointly and severally liable with Sunetics, Inc. for the $244,732.95 in actual damages attributable to the Sunetics litigation, and awarding appellee $53,207.17 in attorneys' fees and costs, together with pre and post-judgment interest. We remand those issues to the trial court for further proceedings. The remainder of the trial court's judgment is affirmed.

111718F.P05

/Lana Myers/
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WOODHAVEN PARTNERS, LTD., WH
MANAGEMENT, INC., MARK JOHNS,
PMR PARTNERS I, LTD., SUNETICS
INTERNATIONAL, L.P. A/K/A
SUNETICS INTERNATIONAL, INC.,
AND JCMJ VENTURES, L.L.C.,
Appellants

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-10-00907-C.
Opinion delivered by Justice Myers.
Justices FitzGerald and Lang participating.

No. 05-11-01718-CV      V.

SHAMOUN & NORMAN, L.L.P. F/K/A
SHAMOUN KLATSKY NORMAN,
Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment holding appellant Mark Johns jointly and severally liable with appellant Sunetics International, Inc. for the $244,732.95 in actual damages and $53,207.17 in attorneys' fees and costs, together with pre and post-judgment interest. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings.

It is **ORDERED** that appellee SHAMOUN & NORMAN, L.L.P. F/K/A SHAMOUN KLATSKY NORMAN recover its costs of appeal from appellants WOODHAVEN PARTNERS, LTD., WH MANAGEMENT, INC., MARK JOHNS, PMR PARTNERS, I, LTD., SUNETICS INTERNATIONAL, L.P. A/K/A SUNETICS INTERNATIONAL, INC., AND JCMJ VENTURES, L.L.C.

Judgment entered this 30th day of January, 2014.

/Lana Myers/
LANA MYERS
JUSTICE

–39–