Opinion filed May 9, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00036-CV
_____

## CST PERMIAN, INC., Appellant

## V.

## SW FLUIDS, LLC, Appellee

**On Appeal from the County Court at Law No. 2
Midland County, Texas
Trial Court Cause No. CC24145**

## M E M O R A N D U M   O P I N I O N

This appeal addresses the trial court's disposition of (1) a breach-of-contract claim that arose from a settlement agreement executed by the parties to this appeal and (2) a suit on sworn account regarding a subsequent business account debt for drilling services and materials. Appellee, SW Fluids, LLC, initiated the underlying lawsuit against Appellant, CST Permian, Inc., to recover damages based on Appellant's alleged breach of contract and subsequent credited business account.

After filing suit, Appellee filed a traditional motion for partial summary judgment on both claims. The trial court granted Appellee's motion, and subsequently signed its final judgment that awarded Appellee liquidated damages for the two claims, attorney's fees, and prejudgment and postjudgment interest.

On appeal, Appellant complains that the trial court erred when it granted summary judgment for Appellee because (1) Appellee is not entitled to summary judgment on its sworn-account claim based on the substance of its pleadings; (2) genuine issues of material fact exist regarding both the sworn-account and the breach-of-contract claims; and (3) the trial court's award of attorney's fees is not supported by sufficient evidence. For the reasons detailed below, we affirm in part, we reverse and remand in part, and we reverse and render in part.

## I. *Factual Background*

Appellee is a drilling fluid supplier in the Permian Basin. On November 8, 2021, Appellee and Appellant executed a settlement agreement in which Appellant agreed to pay Appellee $60,000 and $1,864.06 for attorney's fees incurred by Appellee. Appellant initially made a payment of $20,000. The remaining balance of $40,000 was to be paid by Appellant in twenty weekly installments of $2,000 each, beginning on November 12, 2021. This agreement became effective on November 9, 2021. On that same day, Appellee began providing Appellant materials and services on credit, which was separate from the amount that Appellant was obligated to pay to Appellee pursuant to the terms of the settlement agreement.

On February 2, 2022, Appellee's trial counsel sent Appellant a demand letter that stated that Appellant had failed to proffer the required payments under the terms of the settlement agreement, which resulted in an outstanding amount due Appellee of $25,864.06. Further, from November 9, 2021, to December 15, 2021, Appellee

had credited a total of $57,709.86 to Appellant's business account for additional materials and services, which also remained unpaid.

Subsequently, on March 22, 2022, Appellee filed its original petition against Appellant for breach of contract and suit on accounts, in which it sought to enforce the settlement agreement and recover the outstanding debt of $25,864.06 called for in the agreement, and to recover the payment of the $57,709.86 debt that was related to Appellant's credited account.[1]  In support, Appellee attached a copy of the settlement agreement and an itemized statement of invoices that were credited to Appellant's account.

On July 1, 2022, Appellee filed a traditional motion for partial summary judgment on the claims it had alleged in its pleadings.  That same day, Appellant filed its special exceptions and a verified answer.  In its special exceptions, Appellant contended that Appellee's pleadings were deficient in several respects as it related to the sworn-account claims; however, Appellant failed to obtain either a hearing or a written ruling from the trial court on its special exceptions.  On September 8, 2022, Appellant filed its amended answer, its response to Appellee's motion for partial summary judgment, and a motion to dismiss for lack of jurisdiction.  The trial court later set Appellee's motion for partial summary judgment by submission, without a hearing, for September 15, 2022.

On October 6, 2022, the trial court granted Appellee's motion.  The trial court then signed its final judgment on December 1, 2022, in which it ordered Appellant to pay Appellee a total of $83,573.92 in liquidated damages, $2,736.19 for prejudgment interest, and $4,800 for "reasonable and necessary attorneys' fees and court costs."  This appeal followed.

---

[1]In its original petition, Appellee filed suit against both Appellant and one of its employees, Doug Forrest.  After the trial court granted Appellee's motion for partial summary judgment, Forrest was non-suited.

## II. *Standards of Review*

We review a trial court's grant of a summary judgment de novo. *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a), (c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant establishes its summary judgment burden, the burden shifts to the nonmovant to present evidence that raises a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215. We credit evidence that is favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if "reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial court abuses its

4

discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles in reaching its ruling, or if its ruling is not supported by legally or factually sufficient evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

## III. *Analysis*

On appeal, Appellant presents three issues: (1) Appellee is not entitled to summary judgment on its sworn-account claim because its pleadings are deficient and genuine issues of material fact exist; (2) Appellee is not entitled to summary judgment on its breach-of-contract claim because genuine issues of material fact exist; and (3) the trial court's award of attorney's fees to Appellee is not supported by sufficient evidence.

### A. *Suit on Sworn Account*

In its first issue, Appellant challenges the trial court's grant of summary judgment in favor of Appellee on its sworn-account claim. Appellant's argument on this issue is two-fold: (1) Appellee's original petition for its sworn-account claim failed to conform to the requirements of Rule 185 of the Texas Rules of Civil Procedure; thus, a pleading deficiency exists which precludes the grant of summary judgment; and (2) Appellee did not present competent summary judgment evidence to support the trial court's grant of summary judgment.

A suit on a sworn account is not an independent cause of action. *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979); *S. Mgmt. Servs., Inc. v. SM Energy Co.*, 398 S.W.3d 350, 353 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Rather, it is based on Rule 185 of the Texas Rules of Civil Procedure, which affords a procedural right of recovery in certain contractual disputes. TEX. R. CIV. P. 185; *S. Mgmt. Servs.*, 398 S.W.3d at 353. Rule 185 provides that when a claim is based on an open account "on which a systematic record has been kept," the account "shall be taken as *prima facie* evidence" of the claim if it is supported by

affidavit. TEX. R. CIV. P. 185 (emphasis added); *see also Schum v. Munck Wilson Mandala, LLP*, 497 S.W.3d 121, 124 (Tex. App.—Texarkana 2016, no pet.). The supporting affidavit must state "to the effect that such claim is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed." TEX. R. CIV. P. 185. A plaintiff who meets all the requirements of Rule 185 is entitled to summary disposition of the case without formally introducing the account as evidence of the debt. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 833 (Tex. App.—Dallas 2014, no pet.); *S. Mgmt. Servs.*, 398 S.W.3d at 354.

A defendant may refute this evidentiary presumption by filing a sworn denial of the plaintiff's claim that is supported by an affidavit in which the defendant denies the account as required by Rule 93(10). *Woodhaven Partners*, 422 S.W.3d at 833; *see also* TEX. R. CIV. P. 93(10), 185. If a defendant properly denies the validity of the account, the plaintiff is forced to introduce proof in support of its claim. *Woodhaven Partners*, 422 S.W.3d at 833. However, a defendant who fails to properly file a written denial under oath will not be permitted to dispute either the receipt of the disputed services or the accuracy of the charges. *Id.* (citing *Andrews v. E. Tex. Med. Ctr.–Athens*, 885 S.W.2d 264, 267 (Tex. App.—Tyler 1994, no writ)); *see also* TEX. R. CIV. P. 185.

"[T]he purpose of a verified specific denial is to point out the manner in which the plaintiff's allegations within the petition are not true. Otherwise[,] neither the [trial] court nor the opposing party is apprised of the fact issue that necessitates further litigation." *Andrews*, 885 S.W.2d at 267. "A sworn general denial does not constitute a denial of the account and is insufficient to remove the evidentiary presumption created by a properly worded and verified suit on an account." *Woodhaven Partners*, 422 S.W.3d at 833. The defendant must do more than make

6

a "broad generalization that he 'specifically denies' the sworn account allegations." *Id.* Rather, the defendant's supporting affidavit "must address the facts on which the defendant intends to rebut the plaintiff's affidavit." *Id.*; *see also Andrews*, 885 S.W.2d at 268. A statement in the affidavit that the sworn account is "not true in whole or in part" or that denies that the defendant is "indebted for the amount alleged" in the petition is, at most, a verified general denial that is insufficient to rebut the evidentiary effect of a properly verified sworn-account claim. *Woodhaven Partners*, 422 S.W.3d at 832–34; *Andrews*, 885 S.W.2d at 265, 268. "However, a defendant is not required to file a sworn denial if the plaintiff's suit on a sworn account was not properly pleaded." *Panditi v. Apostle*, 180 S.W.3d 924, 927 (Tex. App.—Dallas 2006, no pet.).

In reviewing Appellee's pleadings, the only evidence that supports Appellee's sworn-account claim is an itemized invoice for a business account that designated Appellant as the customer. Further, Appellee concedes that its original petition was unverified when filed, and that it did not subsequently amend its petition to conform to the requirements of Rule 185. Consequently, Appellee's failure to include a verified affidavit in its sworn-account petition as required by Rule 185 renders the pleading deficient; as such, Appellee's petition does not establish prima facie evidence of Appellant's debt. *See* TEX. R. CIV. P. 185; s*ee also Panditi*, 180 S.W.3d at 927; *Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 562 (Tex. App.—Dallas 2003, pet. denied); *Enernational Corp. v. Exploitation Eng'rs, Inc.*, 705 S.W.2d 749, 750 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

To this point, Appellant argues that, under Rule 185, Appellee's failure to include an affidavit in its sworn-account pleading creates a deficiency that "cannot be cured in a summary judgment motion." However, we note that, based on similar facts, other courts have held that a deficient sworn-account pleading does not

preclude a trial court from considering the merits of a plaintiff's subsequently-filed motion for summary judgment that seeks relief on the pleaded sworn-account claim. *See Birdwell v. Texins Credit Union*, 843 S.W.2d 246, 248–49 (Tex. App.— Texarkana 1992, no writ) (affirming the trial court's grant of summary judgment on a sworn-account claim that was based on a subsequently-filed motion for summary judgment where the plaintiff's pleadings were unsworn and failed to conform to the requirements of Rule 185); *see also Wallander v. Texoma Cmty. Credit Union*, No. 02-08-00457-CV, 2009 WL 1650110, at *3 (Tex. App.—Fort Worth June 11, 2009, no pet.) (mem. op.) (same).

Further, the holdings in *Birdwell* and *Wallander* are consistent with the procedural intent of Rule 185 after this rule was amended in 1984. In illustrating how this amendment affected Rule 185 pleadings, the First Court of Appeals has stated that the purpose of the amendment was "to eliminate the technical pleading requirements of the [rule's] former version." *Canter v. Easley*, 787 S.W.2d 72, 74 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (Citing the comment to the 1984 amendment to Rule 185 which stated that "[t]he rule is rewritten so that suits on accounts will be subject to [the] ordinary rules of pleading and practice."). Therefore, in analyzing a Rule 185 pleading under the ordinary rules of pleading and practice, we must first look to whether Appellant properly excepted and objected to Appellee's pleading deficiencies; if Appellant did not, we then must determine whether the summary judgment evidence supports the trial court's ruling. *Id.*

In a typical pleading and practice scenario, a complaining party is required to specially except and object to a pleading defect where it has notice of the other party's intent. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345–46 (Tex. 2011). A pleading defect is waived unless it is specifically pointed out by a special exception "in writing and brought to the

attention" of the trial court before the complained-of judgment or order is signed. TEX. R. CIV. P. 90; *see Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989); *Smith v. Grace*, 919 S.W.2d 673, 678 (Tex. App.—Dallas 1996, writ denied). However, when special exceptions are filed, the movant has the burden to obtain (1) a hearing on its special exceptions *and* (2) a written ruling from the trial court. *Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 765 (Tex. App.—Texarkana 2017, pet. dism'd); *Smith*, 919 S.W.2d at 678. The failure to do so results in a waiver of the complained-of pleading defects and omissions. *Hartwell*, 528 S.W.3d at 765.

Here, Appellant filed (1) a verified answer in response to Appellee's sworn-account petition, in which it denied the claims asserted in Appellee's suit, and (2) special exceptions in which it challenged the propriety of Appellee's pleadings. Despite pointing out alleged pleading defects in its special exceptions, Appellant failed to obtain a hearing *and* failed to have the trial court rule on its exceptions; therefore, Appellant has waived any complained-of defects that it asserts exist in Appellee's pleadings. *See Hartwell*, 528 S.W.3d at 765. Further, and irrespective of Appellant's contentions, the trial court was not precluded from granting summary judgment in favor of Appellee on its sworn-account claim because Appellee did not move for summary judgment based solely on its pleadings; instead, it submitted summary judgment evidence on the grounds that it had proven its entitlement to judgment on this claim as a matter of law. *See Woodhaven Partners*, 422 S.W.3d at 835; *see also Birdwell*, 843 S.W.2d at 248–49. Therefore, we must proceed to address Appellant's second argument on this issue: whether the trial court's grant of summary judgment on the sworn-account claim is supported by proper summary judgment evidence.

Regardless of whether a plaintiff fails to establish a prima facie case for its sworn-account claim, a plaintiff may justifiably obtain summary judgment relief by

establishing the elements of a sworn-account claim in a summary judgment motion. *Woodhaven Partners*, 422 S.W.3d at 833; *see Birdwell,* 843 S.W.2d at 248–49. The elements of a sworn-account claim are:

> (1) the sale and delivery of merchandise or performance of services; (2) that the amount of the account is 'just,' i.e., the prices charged are pursuant to an express agreement, or in the absence of an agreement, that the charges are usual, customary, or reasonable; and (3) that the outstanding amount remains unpaid.

*Ellis v. Reliant Energy Retail Servs., L.L.C.*, 418 S.W.3d 235, 246 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In its traditional motion for partial summary judgment, Appellee submitted two documents as summary judgment evidence to support its sworn-account claim: (1) various itemized invoices and a statement of Appellant's account; and (2) an affidavit from Malcolm Outlaw in his capacity as Appellee's president. The attached invoices were itemized to show the specific materials and services which Appellee provided Appellant. Each invoice included a statement of the goods/materials to be delivered, the quantity of the goods/materials ordered, the corresponding code for each ordered good/material, the price of the goods/materials, and the date of the order. Additionally, each invoice designated Appellant as the purchaser of the respective goods/materials. The itemized invoices, when summated, indicate that Appellant's account debt was $57,709.86, and this value was established by the attached statement of account and Outlaw's affidavit.

In his affidavit, Outlaw also stated that: (1) Appellee furnished materials, equipment, and/or services to Appellant beginning in 2021; (2) Appellant was charged a reasonable and customary amount for these services; (3) a systematic record of Appellant's account was maintained, and the attached invoices and statement of account were true and correct; (4) Appellee applied all just and lawful offsets, payments, and credits to Appellant's account; (5) the principal balance of

Appellant's account due and payable to Appellee—exclusive of interest—was $57,709.86; and (6) a demand for payment of the principal balance due was made more than thirty days before suit was filed against Appellant. Outlaw's affidavit also incorporated all the facts alleged in Appellee's original petition. Thus, based on the record, Appellee's summary judgment evidence conclusively established all the essential elements for its sworn-account claim. *See Ellis*, 418 S.W.3d at 247.

Upon establishing these facts, the burden then shifted to Appellant to respond and present competent summary judgment evidence to create material fact issues that would preclude the grant of summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). In Appellant's summary judgment response, it argued that there were "fact question[s]" as to whether the issues in the present case related to a different lawsuit that Appellee had filed in a district court. To support its contentions, Appellant proffered three documents: (1) an original petition filed in a district court involving Appellee and Clean Slurry Technology, Inc.; (2) Appellee's original petition in this case; and (3) Appellant's original verified answer.[2]

The other lawsuit—filed by Appellee against Clean Slurry Technology, Inc.—also involves claims for sworn-account and breach-of-contract. However, both the defendant in that suit, Clean Slurry Technology, Inc., and the date of the disputed conduct—June of 2018 through April 18, 2019—are distinct from the facts alleged in this case. Further, the itemized invoices attached to Appellee's original petition in its suit against Clean Slurry Technology, Inc. do not appear to be duplicative of

---

[2]On appeal, Appellant additionally argues that Appellee was not entitled to summary judgment on its sworn-account claim because "[t]he 'evidence' of these essential elements [for a suit on accounts] was only contained in the motion for summary judgment, not [in] Appellee's original petition." As we have said, the trial court could properly consider the evidence presented by Appellee in its motion for partial summary judgment; therefore, Appellee met its burden of establishing this claim in its motion. *See Birdwell*, 843 S.W.2d 246, 248–49; *see also Wallander*, 2009 WL 1650110, at *3.

the invoices attached to Appellee's motion for partial summary judgment in the case before us. Other than this bare and conclusory assertion, Appellant does not elaborate or explain as to how these documents establish a genuine issue of material fact on the sworn-account claim in the present case. Thus, Appellant's proffered evidence does not create a genuine issue of material fact that would preclude the grant of summary judgment in favor of Appellee. *See McDonald v. Foster Mortg. Corp.*, 834 S.W.2d 573, 576 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding that "[a] conclusory statement that there are material issues of fact in dispute, without more is insufficient to defeat a motion for summary judgment").

Appellee argues that Appellant's inclusion of its verified denial—and the attached affidavit of Doug Forrest—fails to create a genuine issue of material fact, because Forrest's affidavit contains only conclusory general denials of Appellee's evidence and is therefore improper and incompetent summary judgment evidence.

"A conclusory statement [in an affidavit] is one that does not provide the underlying facts to support the conclusion." *McEndree v. Volke*, 634 S.W.3d 413, 420 (Tex. App.—Eastland 2021, no pet.); *Bastida v. Aznaran*, 444 S.W.3d 98, 105 (Tex. App.—Dallas 2014, no pet.) (citing *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.)); *see Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied). Conclusory statements in affidavits are not competent summary judgment evidence because they are neither credible nor susceptible to being readily controverted. *Bastida*, 444 S.W.3d at 105; *see Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).

In his affidavit, Forrest broadly and generally denied that (1) the account was founded on business dealings between the parties, (2) the amounts listed were correct and just, (3) all just and lawful offsets have been accounted for, and (4) systematic records kept in the ordinary course of business have been maintained by Appellee.

The statements made by Forrest in his affidavit amount to general, conclusory denials of the allegations in Appellee's original petition, and fail to establish any facts that controvert Appellee's summary judgment evidence. Moreover, Appellant has failed to direct us to any specific or competent evidence in the record that would create an issue of material fact and disprove any of the elements of Appellee's sworn-account claim. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) (conclusory statements in affidavits are not proper summary judgment evidence); *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003) (same); *see also Woodhaven Partners*, 422 S.W.3d at 835.

Based on the record before us, we conclude that Appellee conclusively established all the elements of its sworn-account claim. *See Woodhaven Partners*, 422 S.W.3d at 835. Because Appellant failed to raise a genuine issue of material fact on this claim, the trial court did not err when it granted Appellee's motion for partial summary judgment on this claim. *Id.* Accordingly, we overrule Appellant's first issue.

B. *Breach of Contract*

In its second issue on appeal, Appellant contends that the trial court erred when it granted summary judgment in favor of Appellee on its breach-of-contract claim. Specifically, Appellant contends that Appellee did not present sufficient summary judgment evidence to establish (1) the existence of consideration by the parties, (2) Appellee's tendered performance in accordance with the settlement agreement, or (3) Appellant's breach of the settlement agreement. Appellant further contends that Outlaw's affidavit contained only conclusory statements, and therefore this "conclusory affidavit" is not proper or competent summary judgment evidence and cannot support the grant of summary judgment in favor of Appellee on its

breach-of-contract claim.[3] We conclude that Appellee conclusively established its entitlement to relief on its breach-of-contract claim.

Settlement agreements are governed by the law of contracts. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997); *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). To recover on a breach-of-contract claim, the plaintiff must conclusively establish each of the following elements: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained as a result of the defendant's breach. *Stallion Oilfield Servs. Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214–15 (Tex. App.—Eastland 2019, pet. denied) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)).

Here, Appellee had the burden to show that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law on this claim. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). In support of its argument, Appellee attached multiple documents as evidence of Appellant's contractual breach, including (1) a copy of the settlement agreement between the parties, which became effective on November 9, 2021; (2) Outlaw's affidavit; and (3) a demand letter drafted by Appellee's trial counsel regarding the payments provided for in the settlement agreement.

The settlement agreement was signed on November 8, 2021, by representatives for each party—Outlaw, in his capacity as Appellee's president, and Forrest, in his capacity as Appellant's president—and stated that the document would become effective on November 9, 2021. The settlement agreement further

---

[3]Appellant also contends that the settlement agreement is related to Appellee's district court suit that it filed against Clean Slurry Technology, Inc. As we have previously discussed, the two suits appear to be unrelated and Appellant does not assert any facts to the contrary, other than choosing to rely only on bare and conclusory allegations. As such, the mere fact that Appellee filed a separate lawsuit, alone, does not create a genuine issue of material fact in the case before us.

stated that Appellant agreed to pay Appellee $60,000 as the "settlement payment" and $1,864.06 for attorney's fees on or before January 9, 2021. The settlement agreement also indicated that as of November 5, 2021, Appellant had paid Appellee the sum of $20,000 toward reduction of the total debt, and that the remaining $40,000 was to be paid by Appellant in twenty weekly installments of $2,000, beginning on November 12, 2021. Under the terms of the settlement agreement, Appellant was required to tender the entire agreed-upon principal balance, including prejudgment interest at the rate provided by law, if Appellant failed to pay the required amount within three business days after an installment was due. In consideration, Appellee released all claims against Appellant and its employees, agents, officers, affiliates, members, partners, insurers, and attorneys, subject to Appellant's performance under the agreement.

Outlaw's affidavit was attached in support of Appellee's motion. In his affidavit, Outlaw stated that the two parties entered into a mutual settlement agreement, and that Appellant had only paid $36,000 to Appellee in accordance with the terms of the settlement agreement before monthly payments ceased. Additionally, Outlaw stated that Appellant did not tender the payment of $1,864.06 to Appellee for attorney's fees due under the terms of the settlement agreement, and that Appellant was indebted to Appellee for the total sum of $25,864.06, which represented the attorney's fees and delinquent monthly payments that were due Appellee under the agreement. As such, Outlaw stated that Appellee was damaged in the amount of $25,864.06 for Appellant's breach of the settlement agreement.

Finally, Appellee included a demand letter from its trial counsel to Appellant, dated February 2, 2022. In this letter, Appellee's trial counsel stated that Appellant was delinquent in the payments that were due Appellee under the terms of the settlement agreement and that the remaining balance due Appellee was $25,864.06.

Appellee's trial counsel further stated that Appellee would be seeking an accelerated payment under the terms of the settlement agreement and that Appellee would file suit for the unpaid balance if Appellant did not tender full payment of the past due amount to Appellee within thirty days.

Before we discuss whether Appellee met its summary judgment burden, we must first address Appellant's argument that Outlaw's affidavit was conclusory and therefore constitutes incompetent summary judgment evidence which cannot support Appellee's breach-of-contract claim.

An objection that a summary judgment affidavit is conclusory constitutes an objection to the substance of the affidavit and may be raised for the first time on appeal. *McEndree*, 634 S.W.3d at 420; *City of Wilmer v. Laidlaw Waste Sys. (Dall.), Inc.*, 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994), *aff'd*, 904 S.W.2d 656, 660–61 (Tex. 1995). As we have said, conclusory statements in affidavits are not competent evidence and will not support the grant of summary judgment because they are neither credible nor susceptible to being readily controverted. *Bastida*, 444 S.W.3d at 105; *see Ryland Grp., Inc.*, 924 S.W.2d at 122.

However, "[a] trial court may grant summary judgment based on uncontroverted testimonial evidence 'if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.'" *Eberstein*, 260 S.W.3d at 630 (quoting TEX. R. CIV. P. 166a(c)). For evidence to be readily controverted, it is not enough that the statement could have been easily and conveniently rebutted; rather, the statement or testimony must have been effectively countered or disputed by opposing evidence. *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

None of the statements in Outlaw's affidavit express legal conclusions or unsupported inferences; rather, Outlaw's affidavit contains factual statements that

could have been readily controverted by Appellant with competent summary judgment evidence. Further, in addition to the statements made in Outlaw's affidavit, Appellee provided other documents to support each of his statements. Because Outlaw's affidavit was susceptible to being controverted by competent evidence, his statements were not conclusory, and his affidavit constitutes competent summary judgment evidence. *Trico Techs. Corp.*, 949 S.W.2d at 310.

The record shows that Appellee conclusively established that (1) a valid contract existed between the parties—the settlement agreement, (2) Appellee performed or tendered performance under the terms of the settlement agreement, (3) Appellant breached the terms of the settlement agreement, and (4) Appellee suffered damages as a result of Appellant's breach. Therefore, because Appellee conclusively established the essential elements of its breach-of-contract claim as a matter of law, it met its summary judgment burden. As such, the burden then shifted to Appellant to establish a genuine issue of material fact as to this claim. *See City of Houston*, 589 S.W.2d at 678–79.

Appellant, in its response, argued that there is no evidence (1) of what the settlement agreement concerned, (2) of what consideration was provided for in the settlement agreement, or (3) that the invoices sued for on the sworn-account claim were dated after the settlement agreement was signed. Appellant also argued that a material fact question existed as to whether the terms of the settlement agreement were related to a separate district court case that Appellee had filed against a different entity. In support of these arguments, Appellant attached three documents to its response: (1) Appellee's original petition filed against Clean Slurry Technology, Inc. in a different district court case; (2) Appellee's original petition in this case; and (3) Appellant's original answer and verified denial to Appellee's original petition in this case.

17

As we have previously mentioned, the other suit that Appellee filed against Clean Slurry Technology, Inc. is separate and distinct from the suit that Appellee filed against Appellant in the matter before us. Appellant submitted its original answer and verified denial to Appellee's original petition—which included Forrest's affidavit—as its only evidence to establish that a genuine issue of material fact existed as to Appellee's breach-of-contract claim. In his affidavit, Forrest states that Appellee "has not given [Appellant] credit for all just and lawful offsets, credits and payments in determining the monies owed to [Appellee], if any are in fact owed." He also denies that Appellant failed to make payments as stated in the settlement agreement. Appellant presented no other evidence in support of its arguments.

However, Forrest's affidavit is not proper summary judgment evidence and is insufficient to rebut Appellee's summary judgment evidence. Forrest's statements that relate to Appellee's breach-of-contract claim and the provisions of the settlement agreement—which are similar to his statements regarding Appellee's sworn-account claim—amount to general, conclusory denials of the allegations in Appellee's original petition and fail to create a genuine issue of material fact. *See Elizondo*, 415 S.W.3d at 264; *McIntyre*, 109 S.W.3d at 749–50; *Woodhaven Partners*, 422 S.W.3d at 835.

The applicable standard of review requires that we consider the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the movant. *Knott*, 128 S.W.3d at 215. Because Appellee conclusively established every element of its breach-of-contract claim as a matter of law, and because Appellant failed to present competent summary judgment evidence to create a genuine issue of material fact, we conclude that the trial court did not err when it granted summary judgment in Appellee's favor on this claim.

Accordingly, we overrule Appellant's second issue.

C. *Attorney's Fees*

In its third issue, Appellant argues that the evidence is legally insufficient to support the trial court's award of attorney's fees to Appellee. To support its requests for attorney's fees, Appellee attached to its motion for summary judgment a statement of billing records, as well as an affidavit from Appellee's trial counsel, Brad Miller. In his affidavit, Miller stated that Appellee incurred a total of $4,800 in attorney's fees as of June 30, 2022. In its final judgment, the trial court awarded Appellee $4,800 in attorney's fees and $10,000 for contingent appellate attorney's fees, should Appellee prevail on appeal.

At the outset we note that Appellee, in its brief, acknowledges that there is no proof in the record to support the trial court's award of contingent appellate attorney's fees, and we agree. Appellee offers to voluntarily remit the award of contingent appellate attorney's fees "in their entirety." Therefore, we sustain Appellant's third issue to the extent it complains that there is no evidence to support the trial court's award of contingent appellate attorney's fees.

If either a claim for breach-of-contract or sworn-account is asserted, a trial court may award reasonable attorney's fees to the prevailing party. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b) (West Supp. 2023). "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019); *Deboer v. Attebury Grain, LLC*, 684 S.W.3d 520, 533 (Tex. App.—Eastland 2024, no pet. h.). Whether the fees requested by a prevailing party are reasonable and necessary are questions of fact. *Rohrmoos*, 578 S.W.3d at 498. In this regard, the lodestar method sets forth a

19

two-step standard for the factfinder to utilize so that it may ascertain what constitutes reasonable and necessary attorney's fees. *Id.*

First, the factfinder must determine the number of reasonable hours that counsel worked on the case; those hours are then multiplied by the reasonable hourly rate for counsel's services. *Id.*; *El Apple I*, 370 S.W.3d at 760. At a minimum, the fee claimant's proof of reasonable hours should include "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498. This lodestar calculation approximates "the reasonable value of legal services provided" and, when supported by sufficient evidence, is presumed to reflect "the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 498–99.

Second, because other considerations may justify either an enhancement or a reduction to the lodestar figure, the factfinder must determine "whether evidence of those considerations overcomes the presumption and necessitates an adjustment to reach a reasonable fee." *Id.* at 501. This determination allows for the enhancement or the reduction of the lodestar figure "when considerations not already accounted for in the first step" establish that the lodestar figure represents either an unreasonably low or an unreasonably high fee award. *Id.* at 502. "[C]onsiderations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees." *Id.* at 501 (noting that *Arthur Andersen* lists the factors "that may justify an adjustment" provided they are noncumulative of the base-*lodestar* considerations) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

"General, conclusory testimony [that is] devoid of any real substance will not support a fee award." *Id.* Generalities about tasks that were performed provide insufficient information for the factfinder to meaningfully review whether the tasks performed by counsel and the hours incurred were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, there must be some evidence to inform the trial court of the amount of time that counsel dedicated to specific tasks so that it may meaningfully review the amount of fees requested. *Rohrmoos*, 578 S.W.3d at 502; *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam).

Here, Appellee's request for attorney's fees, upon which the trial court relied when it rendered its attorney's fee award, was supported by Miller's affidavit, along with an attached itemized billing statement. In his affidavit, Miller stated that he provided legal services on this case from March 2022 through May 2022, and that the attached account document shows the legal services that he rendered. Miller further averred that the requested attorney's fees for legal services are reasonable based on multiple factors, including (1) the novelty and difficulty of the issue involved, the skill required to provide the legal services properly, and the experience, reputation, and expertise of the lawyer performing the services; (2) the time and labor involved to perform the legal services properly; and (3) the fee customarily charged in the community for similar services.

The attached billing statement also includes itemized entries for legal services provided by Miller. Each entry discusses the particular legal services performed, the attorney who performed the services, the amount of time required to perform the services, the hourly rate of the attorney who performed the services, and the total billable hours for each task—as required by *Rohrmoos*—for a total of $3,000 in

21

attorney's fees for legal services rendered, which spanned the period from January 20, 2022, through May 11, 2022. *See Rohrmoos*, 578 S.W.3d at 498. Based on our thorough review of these billing records, however, we conclude that certain discrepancies exist.

First, we note that three entries in the billing statements dated for January and February of 2022, do not coincide with the specified dates of legal services performed as stated in Miller's affidavit. As such, these three entries—which total $300 of services—do not satisfy the requirements of *Rohrmoos* and must be disregarded. *Id.* Therefore, only $2,700 of the attorney's fees requested by Appellee are arguably supported by these billing statements.

Miller's affidavit also includes and refers to other fees which do not meet the *Rohrmoos* criteria. In his affidavit, Miller broadly states that "the total amount of attorneys' fees to date is $4,800.00 through June 30, 2022." The additional $1,800 in claimed attorney's fees are not included in the billing statements provided by Appellee, and the only support for this attorney's fee request is a conclusory statement by Miller in his affidavit. We have held that this type of evidence is insufficient to support an award of attorney's fees where the "affidavits did not discuss the particular services performed, who performed the services, the reasonable amount of time required to perform the services, or the reasonable hourly rate for each attorney performing the services." *Jurgens v. Martin*, 631 S.W.3d 385, 418–19 (Tex. App.—Eastland 2021, no pet.); *see also Schauble v. Schauble as Tr. of Edward R. Schauble Tr.*, No. 11-20-00181-CV, 2022 WL 2839224, at *13 (Tex. App.—Eastland July 21, 2022, no pet.) (mem. op.). The same principle applies here.

Therefore, we conclude that Miller's affidavit and the corresponding billing statements only provide sufficient detail as to $2,700 of the $4,800 in attorney's fees that the trial court awarded to Appellee. *See Rohrmoos*, 578 S.W.3d at 502.

22

As such, the trial court abused its discretion when it awarded Appellee $2,100 in unsupported attorney's fees—$300 for fees incurred in January and February of 2022, and $1,800 in fees that were incurred after May 2022. *Id.*

In addition to its sufficiency challenge, Appellant contends, and we agree, that Appellee failed to provide sufficient segregated billing records; therefore, it requests that we remand this issue to the trial court for reconsideration.

Generally, a claimant seeking attorney's fees must segregate the fees that are recoverable from those that are not. *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006)). However, an exception exists where the disputed fees arise from claims that are based on the same transaction and are so intertwined as to make segregation impossible. *Id.* Evaluating whether the claims are so intertwined that they cannot be separated is a question of law that we review de novo. *Tony Gullo Motors I*, 212 S.W.3d at 312–13. Nevertheless, a claimant's failure to properly segregate attorney's fees does not necessarily preclude a party's entitlement to recover attorney's fees altogether; rather, the issue may be remanded to the trial court for reconsideration. *Kinsel*, 526 S.W.3d at 428; *see also Guillory v. Deitrich*, 598 S.W.3d 284, 302 (Tex. App.—Dallas 2020, pet. denied).

The record shows that there are three billing statements whereby Appellee failed to properly segregate the legal services provided: March 11, 2022, March 23, 2022, and April 18, 2022. For each billing statement, the descriptions provided by Miller include multiple tasks listed in succession, separated by semi-colons. Some of these descriptions appear to be related to Appellee's suit against Appellant. However, in each statement, the description of tasks completed contains language that references either a different defendant or a different lawsuit. For example, the April 18, 2022 billing statement description describes the tasks completed as

follows: "Emails with client and counsel; Lengthy *conference with client and FBL*; Review *other case* against CS[T] Permian; Email client." (emphasis added).

From these descriptions, it is unclear if the corresponding billed time that is associated with these entries was properly attributable to the case before us, or if these descriptions as outlined in the billing statements also pertain to Miller's services in another, unrelated case, such as the district court case filed against Clean Slurry Technology, Inc., as Appellant suggests. The two billing statements from March 2022 include similar deficiencies in their descriptions of the tasks performed by Appellee's counsel. Further, Miller's affidavit provides no additional insight into whether these tasks were properly segregated; his affidavit only states that "[a] complete accounting of the services rendered on Plaintiff's behalf in connection with this lawsuit from March, 2022 through May, 2022 is attached," and provides no further explanation as to reasons for these discrepancies.

The party seeking attorney's fees has the burden to prove that the requested fees have been properly segregated or that segregation is not required. *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 872 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). "[T]o meet a party's burden to segregate its attorney['s] fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours related to claims for which fees are not recoverable." *Id.* (quoting *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.)). In this instance, neither Appellee nor Miller presented sufficient evidence to explain how these unsegregated attorney's fees were calculated or what portion of the fees are attributable to the legal services rendered for this case. As such, Appellee did not satisfy its burden. Because the trial court's judgment awards Appellee $1,500 in unsegregated attorney's fees, the trial court abused its discretion when it awarded

this amount in fees to Appellee.  *See Awoniyi v. McWilliams*, 261 S.W.3d 162, 167 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Allan v. Nersesova*, 307 S.W.3d 564, 573 (Tex. App.—Dallas 2010, no pet.).

Accordingly, for the reasons discussed above, we sustain Appellant's third issue.

## IV. *This Court's Ruling*

We affirm in part, we reverse and remand in part, and we reverse and render in part.  The trial court's grant of summary judgment in favor of Appellee and its corresponding judgment on that basis is affirmed.  We reverse the trial court's judgment awarding attorney's fees to Appellee in the amount of $4,800, and we remand this issue to the trial court for reconsideration and a redetermination of the amount of reasonable attorney's fees to be awarded Appellee, if any.  *Kinsel*, 526 S.W.3d at 428.  We reverse the trial court's judgment awarding contingent appellate attorney's fees to Appellee, and we render judgment that Appellee take nothing on that claim.

W. STACY TROTTER
JUSTICE

May 9, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.